# CHARLESTON.

## STATE *v.* BELKNAP.

Submitted March 31, 1894.—Decided April 16, 1894.

1. CRIMINAL PROCEEDINGS—EVIDENCE—ACQUIESCENCE.

Where a party remains silent, who has an opportunity to speak after something has been said in his presence and hearing which gives rise in some fairly appreciable degree to the natural and reasonable inference that it calls for a reply, being otherwise relevant, it should go to the jury for what, in their opinion it may be worth as evidence of acquiescence.

2. CRIMINAL PROCEEDINGS—INSTRUCTIONS.

A case in which an instruction that might have a tendency to mislead was properly modified by the court.

3. CRIMINAL PROCEEDINGS—INSTRUCTIONS.

It is not error to refuse an instruction, not specially adapted to

and based upon the facts of the case, which the evidence fairly tends to prove.

4. CRIMINAL PROCEEDINGS—DISCRETION OF COURT.

The Circuit Court has a wide discretion in holding night sessions, so far limited, however, as that it shall not impair the party's right to a fair trial according to law.

5. CRIMINAL PROCEEDINGS.—JURY.

If the court can see that the officers who had the jury in charge have kept them together within the practical meaning of the rule and have not spoken to them themselves, nor suffered any other person to speak to them, touching any matter relative to the trial, until they have returned again into court, that is sufficient, although it may be that in leaving the courthouse and returning they were separated somewhat more than is usual, and passed within hearing of persons talking on other subjects.

R. G. LINN for plaintiff in error cited 20 W. Va. 713.

Attorney-General T. S. RILEY, for the state cited 27 W. Va. 375 ; 31 W. Va. 355 ; 1 Greenl. (11th Ed.) § 197 ; Ros. Crim. Ev. 54 ; 20 Ia. 267 ; 98 Pa. 398 ; 86 Ind. 104 ; Abb. App. Dec. 362 ; 55 N. Y. 565 ; 17 Ala. 618 ; 62 Me. 127 ; 36 Ohio St. 626 ; 37 W. Va. 744.

HOLT, JUDGE :

On the 29th day of August, 1893, the prisoner, Samuel I. Belknap, was indicted in the Circuit Court of Braxton county for felonious housebreaking. On the 4th day of December, 1893, he appeared and demurred to the indictment and to each count. The demurrer was overruled ; and he thereupon entered the plea of not guilty. Issue was joined, a trial was had, and he was found guilty. He then moved the court on various grounds of error to set the verdict aside and award him a new trial ; but the court overruled the motion and rendered judgment fixing the term of the prisoner's confinement in the penitentiary at two years ; and this writ of error was allowed.

To rulings made during the trial the prisoner took four bills of exceptions and assigned five grounds of error to support his motion. The grounds of error No. 1 and No. 4 are not well taken. As to No. 1, the indictment is in proper form ; and the demurrer was properly overruled. No. 4, that the verdict is contrary to the evidence and against the

weight of the evidence, can not be considered, for the evidence is not certified, nor the facts, proved, further than to show the propriety of the prisoner's motion to exclude certain evidence and the pertinency of an instruction asked for. These facts, as far as they appear, are as follows :

On the night of the 21st day of May, 1893, in the county of Braxton some one broke and entered an outhouse of the prosecuting witness and took therefrom and carried away one bundle of wool, containing fourteen fleeces, worth fourteen dollars, the property of the witness. The officer and his guard in search of the wool and of the burglar and thief following a line of peculiar tracks were led from where the missing wool had been to a barn, where a bundle of wool containing fourteen fleeces was found near the prisoner's house covered over under some hay. This was the wool produced on the trial ; and the attempt was made to identify it as the wool which had been stolen. The officer and his guard went on to the prisoner's house, charged him with taking the wool, and put him under arrest. The prisoner while dressing to go before the justice to have his preliminary examination was told of their following the tracks, when the prisoner put out his foot and asked if the shoe then on it had made the track. Afterwards an old pair of boots of his were called for and produced, the prisoner saying he had not worn them for some time. The officer and guard who had been following the tracks examined the boots, when all said in presence of the prisoner : "Yes, these are the boots that made the tracks." On the trial the officer, examined as a witness by the state over the prisoner's objection was permitted to say : "I have no recollection of the defendant making any remark in answer to what was said by myself and my assistants in regard to the boots." The guard—four in number—were also examined. They all stated the same thing except one, who testified that the prisoner said in reply, that they were not the boots that made the track, as he had not worn them for two or three weeks. He also told the constable to take the boots and shoes, and go out and make two tracks, and he would give five dollars if they could be told one from the other. And the prisoner on his examination as a wit-

ness stated, that he did not hear the conversation about the boots.

The rule is, that in order to make silence admissible as evidence of acquiescence in something said, it must (1) plainly appear that it was heard and understood, and (2) that it naturally and reasonably called for some reply.   See 1 Greenl. Ev. (15th Ed.) § 197; *Whitney* v. *Houghton,* 127 Mass. 527.

The statement in question was made in his presence, and, under the circumstances, must be taken to have been made in his hearing; for the evidence tends to show that he brought on some conversation about it.   The inference from silence, if he was silent, was natural and reasonable enough for the evidence to go to the jury to give it such weight as it was entitled to.   See 1 Rosc. Cr. Ev. (8th Ed.) p. *56.   It was also admissible as a part of the one transaction of what was said and done by the prisoner about the boots; for, whatever it amounts to, it must all be taken together, and some of it was confessedly admissible.

Ground of error No. 3 is:—The court erred in holding a night session under the circumstances.   Over this matter the Circuit Court has and of necessity must have a wide range of discretion.   The time allotted by law for the term is sometimes short; and the court must soon open in some other county of the circuit.   The criminal business stands on the docket to be tried first.   A large number of civil cases may be ready and pressing for trial.   So it was here; and it does not appear that the night session in any wise impaired the prisoner's right to a fair trial according to law.

Ground of error No. 4 is:   The court refused to give in full for the prisoner the following instruction, taken in substance from Sackett on Instructions (2d Ed. p. 651): "The court instructs the jury that one of the essential questions involved in this case is the identity of the wool alleged in the indictment to have been stolen; and, before the jury can convict the prisoner, the identity of the wool must be proved beyond all reasonable doubt."   That part the court gave, but refused to give the latter part, which is as follows:   "And the jury are not bound to believe that

the witnesses were able to identify said wool with certainty because they swear to its identity ; and the jury should not so believe, if they themselves are satisfied from the circumstances proved that there is reasonable doubt as to whether the witnesses were able to and did identify said wool, but should find the defendant not guilty."

The court certifies as the reason for making the modification that there were facts and circumstances in evidence tending to identify the wool found as the wool stolen, in addition to the mere recognition of the prosecuting witness and the statements of the others on the question of identity ; and therefore the question did not depend on the ability of any one to identify or recognize it as the wool taken from the proecutor's out-house in the night time. This is obviously true, for the tracks of the man who stole the bundle of fourteen fleeces led directly from where they had been in the owner's house to where they were found concealed in a barn under some hay.   Such identification would not need much extraneous help by way of recognition by means of some peculiar marks on a thing so uniform in appearance as wool may be, and yet the instruction rejected might have had the effect to lead the jury away from the true and reliable evidence of identification, to the confused and hesitating manner of the owner, when asked on cross-examination how he could tell one white fleece from another.   Such examination I have supposed by way of illustration.

Ground of error No. 5 is :—The court erred in not granting a new trial on the ground of the separation and other misconduct of the jury; and on this point a multitude of affidavits *pro* and *con* were taken and read, tending to show that two of the jurors sat with their eyes closed for a short time ; but their affidavits showed they were not asleep, but somewhat sick, yet heard and paid attention to all that was going on; that on two occasions, as the jury were taken out of the court-house to their boarding house and brought back, the officers, who had them in charge, did not keep them as close together as they ought to have done ; and that they were sometimes in hearing of talking by others, but it was on indifferent subjects.   Yet it did appear

affirmatively that the officer, who had them in charge, kept them together within the practical meaning of the rule and of his oath, and neither spoke to them himself nor suffered any other person to speak to them touching any matter relative to the trial, until they returned again into court.

Some such irregularities and harmless errors are liable to occur during any tedious criminal trial; but, unless aided by something more serious, they are not encouraged as grounds for setting aside verdicts, if the court can plainly see that the prisoner has had a fair and impartial trial substantially in accordance with the patient, cautious and guarded methods of the common-law; for it must be remembered that after such a verdict, sanctioned by the judgment of the court, the presumption of innocence follows him no longer; on the contrary, he comes here with the presumption of guilt against him; and it devolves upon him to show some substantial error, or one likely to have caused him harm. This has not been done, and the judgment must be affirmed..