# CHARLESTON.

## STATE v. HERB ROBINSON.

Submitted December 12, 1923.   Decided November 25, 1924.

1. EVIDENCE—*Statement Adversely Affecting Interest of Another Made in his Presence and Acquiesced in by Him Proper Evidence.*

   A statement adversely affecting the interest of another, made in his presence under such circumstances as to indicate his acquiescence therein, will be received in evidence against him as an admission against interest. (p. 693).

2. SAME—*Statements of One Not Admissible Against Alleged Co-Conspirator Unless in Furtherance of the Object of Conspiracy Established by Prima Facie Proof.*

   The statement of one is not admissible against his alleged co-conspirators unless made in furtherance of the object of the conspiracy which has been established *prima facie* by other proof. (p 693).

Error to Circuit Court, Putnam County.

Action by the State of West Virginia against Herb Robinson. From a judgment for malicious wounding, defendant brings error.

*Reversed and remanded.*

*E. T. England*, Attorney General, *R. A. Blessing* Assistant Attorney General, and *John T. Simms*, for the State.

*T. C. Townsend, Elmer L. Stone* and *Hogg & Hogg*, for defendant in error.

LITZ, JUDGE:

Defendant prosecutes a writ of error to the judgment of the circuit court rendered upon a verdict of guilty against him for the malicious wounding of one, Walter Adkins. By this judgment the defendant is sentenced to serve a term of four years confinement in the State penitentiary.

The defendant was tried separately under an indictment charging him, George Wisman, James Wisman, and Charlie Robinson as joint participants in a shooting affray, which occurred in Putnam county, May 13, 1921, in a building used

and occupied by George Hodges as a storeroom and dwelling house. The circumstances of the transaction have been heretofore detailed in the cases of *State* v. *George W. Wisman,* 93 W. Va. 183, 116 S. E. 698, and *State* v. *James Wisman,* 94 W. Va. 224, 118 S. E. 139. The evidence in this case differing somewhat from that in the former cases, is substantially as follows:

Grant Adkins testified on behalf of the State that some time after eleven o'clock a. m., on the day of the difficulty, he saw the defendant, George Wisman, James Wisman and Charlie Robinson, riding horseback past his home; that shortly thereafter, on his way afoot to the store of Weep Young, in the community, he also observed George Wisman and some of the others at a distance of 75 yards or more, "all strung out riding pretty fast"; that he thought the defendant was among the riders but was not sure that he saw all four of the men; however some one in the party, whose voice he did not recognize, said "We'll catch the son of a bitch and kill him"; that supposing the remark intended for him, he ran and, traveling about two miles (partly through woods) came to the store and residence building of George Hodges; that observing the immediate approach of the Wismans and Robinsons about the time of reaching the house, he hurriedly entered, passing through the store compartment into the dining room, where Walter Adkins, the son of the witness, and son-in-law of George Hodges, was eating dinner in the presence of his wife, her mother, and brother, Warren Hodges, sixteen years of age. George Wisman at once came into the store for the purpose, as he says, of buying a lunch and some tobacco. Wisman states that Mrs. Hodges, who waited on him, had started to the kitchen for a can opener to open a tin of potted ham, when he heard loud screaming coming from the dining room; that he immediately walked back to the door of the room, and inquiring the trouble, observed Grant Adkins, Walter Adkins and the women in a tussle trying to get possession of a shotgun; that being ordered to leave under the pain of death, he was fired on by Grant Adkins with the shotgun. According to the State's evidence Wisman followed Mrs. Hodges to the dining room and stood in the door with one hand behind him holding a pistol, and upon being ad-

dressed in a civil manner by Grant and Walter Adkins, used profane and insulting language toward them. At this juncture defendant appeared and, without speaking, at a motion or signal from Wisman, fired a pistol in the direction of Walter Adkins, the bullet striking the edgs of the dining room door and shattering the glass of a window in an adjoining bed room; Grant Adkins then seizing a single barrel shotgun, picked up by his son Walter, struck the defendant's arm as he attempted to discharge the pistol again, causing the shot to take effect in the store steps. About this time, while Walter Adkins was attempting to disarm George Wisman, defendant fired a third shot, striking Walter Adkins in the body. George Wisman finally attacked Grant Adkins and during the struggle between them Adkins was shot by Charlie Robinson. It appears that Warren Hodges and James Wisman also entered the fray. The defendant testified that he was not in the store room until after the shooting; that he took no part in it, and was unarmed. Of all these questions, however, the jury were the judges.

The following of the errors assigned will be considered:

(1) Dr. Gott testified that soon after the difficulty he met defendant in company with George Wisman, and that in response to his query concerning the combat Wisman said, "If anybody starts anything with George, he always has friends around to look after his interests". Objection is made to this evidence. The circumstances indicating that the defendant acquiesced in the alleged statement by Wisman, it was properly admitted as an admission against interest.

(2) Walter Adkins' wife testified that immediately after the shooting ceased, before the combatants had dispersed, James Wisman drew a gun on Warren Hodges and threatened to kill him. This evidence, the admission of which is complained of, relates to a part of the *res gestae* and was therefore competent.

(3) It is charged that the court erroneously refused defendant's instruction No. 2, which would have told the jury that if one of their number did not believe the defendant guilty beyond all reasonable doubt, they could not find him guilty. We think the principle of this instruction was suf-

ficiently covered by instruction No. 1 given for defendant, and that its refusal therefore, does not constitute error.

(4)   The testimony of Grant Adkins, attributing to one of the men on horseback the statement, ''We'll catch the son of a bitch and kill him.'', is seriously complained of.   This evidence is potent and no doubt materially influenced the jury against the defendant.   As it is not shown that he made the alleged statement, its introduction would be proper only upon the theory of conspiracy between him and his co-indictees, established *prima facie* by other evidence in the case. *Williamson* v. *Commonwealth,* 4 Gratt., 547 ; *State* v. *Cain*, 20 W. Va. 680 ; *State* v. *Burnett,* 47 W. Va. 731, 35 S. E. 986. Assuming such *prima facie* case of conspiracy, the statement is yet inadmissible unless made in furtherance of the object of the conspiracy.   Cases cited and *Sands* v. *Commonwealth,* 21 Gratt., 871.   It cannot be said that the statement discloses a conspiracy to attack the witness, as the conclusion is not warranted that the alleged threat was made against him.   It does not even appear that he was seen by any one of the party, or that the speaker was a Wisman or Robinson.   The witness did not definitely recognize any one except George Wisman, but thinks the defendant was along.   In view of the uncertain, but harmful, character of the evidence in question it is the opinion of the Court to hold that its admission constitutes reversible error.

The remaining assignments of error, involving mere matters of general procedure in felony cases which should not arise on another trial, need not be determined on this writ.

The judgment will be reversed, verdict set aside, and a new trial awarded the defendant.

*Reversed and remanded.*