## Richmond

KENNETH J. DYKEMAN v. COMMONWEALTH OF VIRGINIA.

April 25, 1960.

Record No. 5104.

Present, All the Justices.

The opinion states the case.

*Richard G. Brydges* (*George W. Vakos,* on brief), for the plaintiff in error.

*Reno S. Harp, III, Assistant Attorney General (A. S. Harrison, Jr., Attorney General, on brief), for the Commonwealth.*

WHITTLE, J., delivered the opinion of the court.

This writ of error brings under review the proceedings in the trial of Kenneth J. Dykeman who was convicted of involuntary manslaughter and sentenced in accordance with the verdict of the jury to one year in jail.

We are asked to reverse the judgment on two grounds, (1) that the defendant's plea of former jeopardy was improperly overruled; and (2) that the court erred in admitting certain evidence.

The record discloses that Dykeman, a twenty-year-old soldier, was involved in an automobile accident on Hampton Boulevard in the City of Norfolk, about 1:30 a.m., on October 3, 1958. In the accident Frances Duncan, a passenger in the death car, was killed. The car was registered in the name of Dykeman's mother but in actuality it belonged to the defendant. At the time of the accident the car was occupied by Edward Williams, John Whitehead, Joan Brannon, the defendant, and the deceased girl Frances Duncan.

Williams and Whitehead were soldier-companions of the defendant. It is conceded that all parties involved were either under the influence of alcohol or had been drinking heavily. At the time of the accident the automobile was traveling at a rate of speed in excess of 80 miles per hour and went out of control near Hampton Boulevard bridge where it left the road and turned over several times.

When the police officers arrived they found the three men outside the automobile and the two girls inside. At this time a controversy arose as to the driver's identity. Dykeman and Whitehead were immediately taken to the hospital. Williams was taken to police headquarters. At police headquarters, while under interrogation by the police officers, Williams gave a written statement (hereinafter referred to) naming the defendant as the driver of the automobile. Later Williams and the defendant were charged with both reckless driving and manslaughter.

It is stated in the brief filed by the defendant that on October 17, 1958, he was tried in the Traffic Court of the City of Norfolk for reckless driving, where he was convicted and sentenced to pay a fine of $500 and given twelve months in jail. He was also ordered held for action by the grand jury on the manslaughter charge and was

subsequently indicted for that offense. It is also alleged that an appeal was taken from the reckless driving conviction and he was acquitted; that at the trial on the reckless driving charge "the defendant based his defense solely and entirely upon the contention that he was not the driver of the vehicle at the time of the accident."

On the 24th day of February, 1959, the defendant was brought to trial on the indictment charging him with manslaughter, at which time he filed a motion to quash the indictment based on his plea of former jeopardy. In this plea the defendant maintained that since the jury had acquitted him of reckless driving based on the theory that he was not the driver of the death vehicle he was being twice tried for the same offense. The motion was overruled and exception noted.

This ruling brings under review the first question presented, *i.e.*, was the defendant's plea of former jeopardy improperly overruled?

Our conclusion is that the court properly overruled the motion. In the first place, an examination of the record indicates that there is no copy of the warrant in the reckless driving case contained in the record and this in itself would preclude us from reviewing the alleged error for we are unable to ascertain the exact charges placed against Dykeman in the prosecution by the City of Norfolk. *Burford* v. *Commonwealth*, 179 Va. 752, 20 S. E. 2d 509. But even if a copy of the warrant were in the record the defendant's acquittal on the reckless driving charge would not constitute a bar to his prosecution on the involuntary manslaughter charge. Reckless driving and involuntary manslaughter are two separate and distinct offenses.

The defendant is attempting to come within the protection given by the first sentence of Code, § 19-232, which reads:

"If the same act be a violation of two or more statutes, or of two or more municipal ordinances, or of one or more statutes and also one or more ordinances, conviction under one of such statutes or ordinances shall be a bar to a prosecution or proceeding under the other or others."

This statute deals with a "conviction". Dykeman was found not guilty on the reckless driving charge and therefore the section does not apply. *Owens* v. *Commonwealth*, 129 Va. 757, 759, 105 S. E. 531.

The defendant next contends that the Commonwealth was barred from prosecuting him because of the protection afforded by Section 8 of the Constitution of Virginia which reads in part:

"He shall not be deprived of life or liberty, except by the law of the land or the judgment of his peers; nor be compelled in any criminal proceeding to give evidence against himself, nor be put twice in jeopardy for the same offense."

As heretofore stated, reckless driving and involuntary manslaughter are two separate and distinct offenses. The City of Norfolk was prosecuting Dykeman on the reckless driving charge under its ordinance in the first instance, whereas the Commonwealth of Virginia was prosecuting him on the involuntary manslaughter charge.

It is manifest that two separate and distinct offenses may arise out of the same occurrence. *Hundley* v. *Commonwealth*, 193 Va. 449, 451, 69 S. E. 2d 336, 337, 338; *Lawrence* v. *Commonwealth*, 181 Va. 582, 26 S. E. 2d 54; 15 Am. Jur., Criminal Law, § 390, pp. 65-66.

▇ This brings us to the second assignment of error, *i.e.*, the court erred in admitting certain evidence.

This question is paraphrased by the defendant as follows: "Did the court err in allowing a written statement of the Commonwealth's witness, Edward Williams, to be read to the jury, when he, Williams, was present in court and available to testify?"

The admission of this statement arose in the following manner: Detective Woods of the Norfolk police department was on the witness stand. The detective testified that when Dykeman was returned from the hospital "he came into the Homicide office where Detective O'Neal, Williams, and myself were. We told Dykeman that he had been implicated by Williams in his statement in the operation of the vehicle in which Frances Duncan was killed. * * * We asked him did he have any statement to make regarding the accident. He said that he did not know anything about the accident, that he was asleep. * * *" The statement was then, at the request of the officers, read by Williams to Dykeman, after which Dykeman stated "he did not remember anything after the accident." .

The officer was then asked to read the Williams statement to the jury, at which time the attorney for the defendant vigorously objected to the statement being introduced in evidence, asserting that Williams was present in court and could testify as to what transpired, and that the statement was purely hearsay.

The objection was overruled by the court, exception noted, and Detective Woods was ordered to read the statement.[1]

---

[1] Statement of Edward Williams, RA 17436580, white male, in regard to the fatal accident in which Frances Duncan, white female, eighteen, died as a result of the

We hold that the admission of the statement under the circumstances was error.

The general rule is that when a statement accusing one of the commission of an offense is made in his presence and hearing and is not denied, both the statement and the fact of his failure to deny are admissible in a criminal proceeding against him as evidence of his acquiescence in its truth. It is based on the theory that the natural reaction of one accused of crime is to deny the accusation if it is unjust or untrue. The accusation and his silence thereunder to be admissible must, however, have been under such circumstances as would naturally call for a reply or denial and such as would afford a favorable opportunity for denial. The character of the incriminating statement made to the accused would render it inadmissible as

---

accident at the intersection of Hampton Boulevard and Claude Lane, approximately 1:45 a.m., October 3, 1958, as made to Detectives M. E. Woods and N. O'Neal, Homicide Office, at 5:30 a.m., October 3, 1958.

Question: What is your full name?
Answer: Edward Williams.
Question: Where do you live?
Answer: 347 Transportation Company, Fort Story, Virginia.
Question: Are you a member of the Army; is that correct?
Answer: The Army is correct.
Question: How long have you been in the Army?
Answer: Two years, eleven months.
Question: Did you know the deceased, Frances Duncan?
Answer: Yes.
Question: She was in your company this evening up until the time of the accident?
Answer: Yes.
Question: Would you tell us who was with you besides Frances Duncan when this accident took place?
Answer: John Whitehead, Dykeman and a girl. Her name was Joyce. I do not know her last name.
Question: Where were you sitting in the automobile?
Answer: On the front seat, far right-hand side, next to Frances.
Question: The driver was who?
Answer: Dykeman.
Question: Who occupied the back seat?
Answer: Joan, or Joyce, and Whitehead.
Question: Ed, I want you to tell me in your own words the events of last night leading up to the accident.
Answer: We let this young lady out, and we was going across the overpass. We were arguing with Ken about his driving. On the far side of the overpass, on the downhill side of the bridge, Dykeman left the controls of the car. We were going approximately 80 miles an hour. I told Dykeman to slow down or either stop the car and let me drive, and Fran said the same thing. We argued for about a minute. It does not take you any time to go down the bridge. He said "To hell with it, you drive," and left the wheel. He got away from the wheel and came over to where I was on the far side of the car. I told him to get back to the wheel, and

hearsay except for the fact that the statement is not offered in evidence as proof of a fact asserted but as a predicate to the showing of the reaction of the accused thereto. In all instances caution must be exercised in receiving evidence of a statement made to the accused and his failure to deny it. The test is whether men similarly situated would have felt themselves called upon to deny the statements affecting them in the event they did not intend to express acquiescence by their failure to do so. *Knight* v. *Commonwealth*, 196 Va. 433, 436, 83 S. E. 2d 738, 740; 20 Am. Jur., Evidence, § 570, pp. 483, 484.

In this instance Williams was present in court and could testify as to what transpired and thus have been subjected to cross-examination. It will be observed that when the statement was read to the

---

he said, "To hell with it" again. We hit the wedge, the telephone pole and the guy wire, then the shrubbery, and wound up alongside the building.

Question: While you were in this group how much had you people had to drink?

Answer: Over a fifth of Vodka and a six-pak of beer. It was five cans of beer and at least a fifth of Vodka; well over a fifth of Vodka and a six-pak of beer.

Question: Who was the first person out of the car?

Answer: I was. I came out of the window on the left hand side—the driver's side of the car. The door is wired shut and you can't open the door. That is the reason I had to come through the window.

Question: How did you get on the left hand side of the car?

Answer: I could not say. I don't know. That is where I came out of.

Question: Who was driving the car when the accident occurred?

Answer: Nobody.

Question: How do you explain that nobody was driving the car at that time?

Answer: Dykeman had left the wheel and was crawling over Fran, and that left nobody driving.

Question: In what condition were you before the accident happened?

Answer: I was drunk; not plastered. I knew what I was doing, but I was drunk.

Question: What condition would you say Dykeman was in?

Answer: He was drunk, too.

Question: Was it prearranged between you and Dykeman before he abandoned the wheel that you would take his place as the operator of the car?

Answer: It was not. I would drive when he did not want to. I started out driving, and we went down the road about five or ten miles outside the West Gate and then Dykeman drove.

Question: In other words, he gave you no warning that he had ceased to operate the car?

Answer: The only thing he said was this: "If you don't like my driving, you drive your own damn self."

Question: Do you have a driver's license?

Answer: I have, but I am registered in Illinois. It was lost in my wallet.

Question: When did you lose your wallet?

Answer: It was a good three weeks prior to the accident.

Question: Is this statement true to the best of your knowledge, made without threat or promise from me or any member of the Norfolk Police Division?

Answer: Yes.

(Signed—Edward Williams.)

accused his reply was "I do not remember". Such answer can neither be construed as remaining silent nor admitting guilt. It will also be observed that there is much in the statement dealing with matters other than who was the driver of the death car. Jurors tend to accord added significance to the exhibition of a written statement. *Williams* v. *Morris, Administratrix,* 200 Va. 413, 417, 105 S. E. 2d 829, 832.

The admission of statements such as here contended for by the Commonwealth is fully discussed in *Owens* v. *Commonwealth,* 186 Va. 689, 43 S. E. 2d 895. We adhere to the views there expressed. However, that case is readily distinguishable from the case at bar.

In this instance the defendant did not remain silent, neither did he admit his guilt. His answer was "I do not remember." He has consistently contended that he was not the driver of the death car.

Under the related circumstances the statement was hearsay and improperly admitted. *Knight* v. *Commonwealth, supra; Plymale* v. *Commonwealth,* 195 Va. 582, 592, 79 S. E. 2d 610, 616.

For the reasons stated the judgment is reversed and the case remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*