329 S.E.2d 874

**STATE of West Virginia**

v.

**James Ronald HOWERTON.**

**No. 16129**

Supreme Court of Appeals of West Virginia.

April 18, 1985.

802

J.T. Meisel, George D. Beter, Huntington, for appellant.

S. Clark Woodroe, Asst. Atty. Gen., Charleston, for appellee.

MILLER, Justice:

The defendant, James Ronald Howerton, was convicted by a jury in the Circuit Court of Cabell County of committing second degree murder when he was seventeen years old. He was transferred from juvenile jurisdiction to adult criminal jurisdiction in August, 1981, upon a finding by the trial court that probable cause existed to believe he had committed a murder. W.Va.Code, 49–5–10(d)(1); *see State ex rel. Cook v. Helms*, 170 W.Va. 200, 292 S.E.2d 610 (1981).

Although the defendant did not exercise his right to a direct statutory appeal from the transfer order, he nonetheless challenges the validity of his transfer on the ground that the trial court failed to make adequate findings of fact and conclusions of law. He also contends that the trial court's failure to consider his mental and physical condition and other personal factors in ordering his transfer violates due process of law as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and Article III, Section 10 of the West Virginia Constitution. The defendant also assigns five errors seeking reversal of his criminal conviction. For the reasons that follow, we affirm.

## I.

■ Defendant's right to challenge the order transferring him from the juvenile to the adult court is controlled by W.Va.Code, 49–5–10(f). This statute provides that notice of intent to appeal and a request for a transcript must be filed with-

in ten days from entry of the transfer order. It also requires that a petition for appeal must be presented to this Court within forty-five days from entry of the transfer order, or the right of appeal and the right to object to the transfer order shall be waived and may not thereafter be asserted.[1] We, therefore, hold that a juvenile defendant's failure to comply with W.Va.Code, 49–5–10(f), relating to a direct appeal of a transfer to the criminal jurisdiction of the circuit court, forecloses our considering his objection as to the transfer hearing on his subsequent criminal appeal.[2] Our statute is in accord with the general rule independently fashioned by courts that an appeal of a juvenile transfer must be made prior to the criminal trial and, if it is not, the validity of the transfer cannot be challenged as a part of the subsequent criminal appeal. *People v. Chi Ko Wong*, 18 Cal.3d 698, 557 P.2d 976, 135 Cal.Rptr. 392 (1976); *State v. Stanley*, 60 Hawaii 527, 592 P.2d 422, *cert. denied*, 444 U.S. 871, 100 S.Ct. 149, 62 L.Ed.2d 97 (1979); *State v. Harwood*, 98 Idaho 793, 572 P.2d 1228 (1977); *People v. Goodman*, 41 N.Y.2d 888, 362 N.E.2d 615, 393 N.Y.S.2d 985 (1977).[3]

## II.

One of the defendant's principal assignments of error involves the admission of his oral confession given to a Huntington city police officer while he was in custody. He claims that the statement was admitted in violation of a provision of our juvenile law dealing with the admissibility of extrajudicial statements by juveniles. He also contends that the statement was the product of an illegal arrest and was therefore not admissible.

The statement was made on the afternoon of July 5, 1981. The defendant's parents, in response to a telephone call by a Huntington police officer, brought him to the juvenile unit of the police department. There, he was advised that he was being placed under arrest. According to the police officer's testimony, the defendant, in the presence of his parents, was advised of his *Miranda* rights. The defendant then stated that he invited the victim to a river bank picnic at the direction of a third person and was present when this person shot the victim.

The defendant contends that this oral incriminating statement made when he was seventeen years of age should have been suppressed under the language of W.Va. Code, 49–5–1(d) (1978), which provides: "Extra-judicial statements other than res gestae statements by a child under sixteen years of age, made to law-enforcement officials or while the child is in custody and outside the presence of the child's counsel shall not be admissible."

The defendant interprets this language to mean that incriminating statements by juveniles over sixteen years of age made to law enforcement officials or while in custody without the benefit of counsel are not admissible. The only exception is if the incriminating statement is a res gestae

1. W.Va.Code, 49–5–10(f), provides, in pertinent part:

 "The child shall have the right to directly appeal an order of transfer to the supreme court of appeals of the State of West Virginia: Provided, that notice of intent to appeal and a request for transcript be filed within ten days from the date of the entry of any such order and the petition for appeal shall be presented to the supreme court of appeals within forty-five days from the entry of such order, and that, *in default thereof, the right of appeal and the right to object to such order of transfer shall be waived and may not thereafter be asserted.*" (Emphasis added).

2. We note that the evidence adduced at the transfer hearing was clearly sufficient to sup-

port the trial court's finding of probable cause and that no objection was made at the transfer hearing to evidence of the defendant's incriminating statement.

3. In *Chi Ko Wong*, the California Supreme Court identified several policy considerations that warranted nonreviewability of the transfer order after the subsequent criminal conviction. First, it might cause a reversal where the criminal trial itself was free of error. Second, it would allow the juvenile to see if he received a successful verdict in the criminal proceeding and, if not, to assert transfer error. Finally, it was in the juvenile's best interest to promptly appeal the juvenile transfer in order to obtain the benefits of the juvenile act and to avoid the more severe burdens of a criminal trial.

statement by a child over sixteen years of age. He reads the prepositional phrases "by a child" and "under sixteen years of age" as modifying "res gestae statements" rather than "[e]xtra-judicial statements."

■ We cannot agree with this construction of the statute. To accept the defendant's contention would lead to the absurd result not contemplated by the legislature of placing an evidentiary restriction on the admissibility of res gestae statements based on the age of the declarant.[4] As we said in *State ex rel. Simpkins v. Harvey*, 172 W.Va. 312, 305 S.E.2d 268, 277 (1983): "Such an interpretation would contradict the duty of this Court to avoid whenever possible a construction of a statute which leads to absurd, inconsistent, or unreasonable results."

■ This provision came into our juvenile law as a result of the extensive revisions made in 1977 to our juvenile act.[5] These revisions provided enhanced rights to juveniles.[6] For the first time, the legislature provided guidelines for the taking of juvenile confessions in W.Va.Code, 49-5-1(d). It is against this background that we scrutinize the statute. We conclude that W.Va.Code, 49-5-1(d) (1978), was designed to prohibit juveniles under the age of sixteen years from giving incriminating statements when in custody and outside the presence of the child's counsel, but does not apply to children sixteen years of age or older. We note that its provisions were altered in 1982.[7] We had indicated this conclusion by way of dictum in *State v. Laws*, 162 W.Va. 359, 364, 251 S.E.2d 769, 773 (1978): "[U]nder the current provision of *W.Va.Code*, 49-5-1(d) [1978] extra-judicial statements other than *res gestae* statements by a child under sixteen years of age made to law enforcement officers are not admissible if made outside the presence of the child's counsel."

■ From the foregoing, it is clear that the defendant's oral confession in this case is tested by the general standard relating to a juvenile's confession since the special statutory restriction is not applicable because the defendant was seventeen years of age. We dealt with this issue in Syllabus Point 1 of *Laws*, which involved a juvenile's confession made prior to the time that there was any statutory regulation of a juvenile's confession:

"There is no constitutional impediment which prevents a minor above the age of tender years solely by virtue of his minority from executing an effective waiver of rights; however, such waiver must be closely scrutinized under the totality of the circumstances."

Syllabus Point 1 of *Laws* accurately reflects our current law when we add the following phrase: "Subject to the provisions of W.Va.Code, 49-5-1(d)."

We also set out in *Laws* a number of factors that should be considered in ascertaining whether a juvenile's confession

---

4. In our law of evidence, "res gestae" is often referred to as a spontaneous exclamation and is an exception to the hearsay rule because its spontaneity vouches for its truthfulness. In *State v. Young*, 166 W.Va. 309, 273 S.E.2d 592, 597 (1980), we discussed the concept at some length and pointed out that it can encompass declarations of present physical, emotional or mental conditions and present sense impressions. *See* F. Cleckley, Handbook on Evidence §§ 46 & 60 (1977).

5. 1977 W.Va. Acts ch. 65.

6. Withers, *Seen and Not Heard: Recent Legislation Affecting Child Welfare In West Virginia*, 80 W.Va.L.Rev. 231, 237 (1978).

7. W.Va.Code, 49-5-1(d) (1982), now reads:
 "Except as herein modified, at all adjudicatory hearings, the rules of evidence applicable in criminal cases shall apply, including the rule against written reports based upon hearsay. Unless otherwise specifically provided in this chapter, all procedural rights afforded adults in criminal proceedings shall be applicable. Extrajudicial statements, other than res gestae, by a child under fourteen years of age to law-enforcement officials or while in custody, shall not be admissible unless made in the presence of the child's counsel.
 "Extrajudicial statements, other than res gestae, by a child under sixteen years of age but above the age of thirteen to law-enforcement officers or while in custody, shall not be admissible unless made in the presence of the child's counsel or made in the presence of and with the consent of the child's parent or custodian who has been fully informed regarding the child's right to a prompt detention hearing, his right to counsel including appointed counsel if he cannot afford counsel, and his privilege against self-incrimination."

should be admitted.[8] Most courts including the United States Supreme Court have adopted a similar approach in the absence of specialized statutes. *See Fare v. Michael C.,* 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); *Quick v. State,* 599 P.2d 712 (Alaska 1979); *State v. O'Connor,* 346 N.W.2d 8 (Iowa 1984); *State v. Hudson,* 404 So.2d 460 (La.1981); *State v. Nicholas S.,* 444 A.2d 373 (Me.1982); *Matter of Welfare of M.D.S.,* 345 N.W.2d 723 (Minn.1984); *Commonwealth v. Williams,* 504 Pa. 511, 475 A.2d 1283 (1984); *State v. Caffrey,* 332 N.W.2d 269 (S.D.1983); *Dutil v. State,* 93 Wash.2d 84, 606 P.2d 269 (1980) (En Banc); *State v. Woods,* 117 Wis.2d 701, 345 N.W.2d 457 (1984); *State v. Hunt,* 607 P.2d 297 (Utah 1980); Annot., 87 A.L.R.2d 624 (1963). The defendant does not contend that his oral confession was invalid under the foregoing totality rule.

▬▬▬ The defendant argues that his confession was invalid because no exigent circumstances existed justifying his arrest without a warrant. He relies on Syllabus Point 1 of *State v. Canby,* 162 W.Va. 666, 252 S.E.2d 164 (1979). In *Canby,* we dealt with the warrantless arrest of a defendant in his home and stated that probable cause and exigent circumstances were necessary.[9] Here, the defendant was not arrested in his home but after he was brought to the police station. We spoke to the right of police officers to make a warrantless arrest for a felony in a public place in *State v. Craft,* 165 W.Va. 741, 272 S.E.2d 46, 54 (1980): "There is little question that the right to arrest in public without a warrant, based on probable cause that the person

has or is about to commit a felony, is the general if not universal rule in this country." The defendant does not contend that the police lacked probable cause to place him under arrest at the police station and, therefore, his arrest was valid.

Under the foregoing law, we believe the trial court was correct in admitting the defendant's oral confession.

## III.

The defendant claims that the trial court committed reversible error in admitting testimony concerning incriminating statements he made while under the influence of sodium amytal. This test was conducted at the direction of defense counsel who retained a psychiatrist to administer sodium amytal to the defendant and then reviewed with him the criminal episode. This interview was tape recorded and the defendant obtained a copy of the tape. He thereafter took the tape to the home of an acquaintance and played it. One of the persons who heard the tape testified at trial, over the defendant's objection, as to his recollection of certain incriminating statements made on the tape. At the time the defendant played the tape, he made the comment that it was his truth serum tape. The tape itself was not introduced into evidence.

The trial judge, faced with this rather unique situation, decided that he would let in this testimony on the basis that the defendant played the tape and did not deny its truthfulness. He indicated that counsel should prepare some type of limiting in-

---

**8.** In *Laws,* 162 W.Va. at 363, 251 S.E.2d at 772, we stated:

"[A]ny confession made by a minor must be scrutinized under the totality of the circumstances which includes an evaluation of the following factors:

" '1) age of the accused; 2) education of the accused; 3) knowledge of the accused as to both the substance of the charge, if any has been filed, and the nature of his rights to consult with an attorney and remain silent; 4) whether the accused is held incommunicado or allowed to consult with relatives, friends or an attorney; 5) whether the accused was interrogated before or after formal charges had been filed; 6) methods used in interrogation;

7) length of interrogations; 8) whether vel non the accused refused to voluntarily give statements on prior occasions; and 9) whether the accused has repudiated an extra judicial statement at a later date.' " (Citation omitted).

**9.** In Syllabus Point 1 of *State v. Farmer,* 173 W.Va. 285, 315 S.E.2d 392 (1983), we expressly limited the exigency requirement to arrests in the home, stating: "Syllabus Point 1 of *State v. Canby,* 162 W.Va. 666, 252 S.E.2d 164 (1979), which covers arrests without warrants, requiring both probable cause to believe that a felony has been committed and exigent circumstances, is limited to arrests made in the home."

struction for the jury on this point. However, this was not done.

Courts have rather uniformly held that statements made by a criminal defendant under the influence of sodium amytal, a so-called "truth serum," are not admissible for the truth of the matters asserted therein, whether offered by the prosecution or by the defense. The principal rationale for exclusion is that such tests have not been shown to have attained scientific acceptance as a reliable and accurate means of ascertaining truth or deception. *See, e.g.,* *State v. Thomas,* 79 Ariz. 158, 285 P.2d 612 (1955), *cert. denied,* 350 U.S. 950, 76 S.Ct. 326, 100 L.Ed. 828 (1956); *People v. Johnson,* 32 Cal.App.3d 988, 109 Cal.Rptr. 118 (1973); *State v. Linn,* 93 Idaho 430, 462 P.2d 729 (1969); *People v. Cox,* 85 Mich. App. 314, 271 N.W.2d 216 (1978); *State v. Lindemuth,* 56 N.M. 257, 243 P.2d 325 (1952); Annot., 23 A.L.R.2d 1306 (1952). A related ground for excluding such evidence concerns the danger of suggestion by the physician or person administering the test.[10] We have utilized much the same rationale in rejecting the admissibility of polygraph test results. *State v. Frazier,* 162 W.Va. 602, 252 S.E.2d 39 (1979).

■ The question here is whether the defendant's subsequent voluntary playing of the tape to a third party enables the third party to testify concerning the tape. We do not believe that the trial court's basis for admitting the testimony on the theory that it was a tacit admission by

silence was entirely correct. This theory is premised on the fact that some accusation is made in the presence of and directed at the defendant which would ordinarily call for a denial or a response and the defendant remains silent. *State v. Robinson,* 97 W.Va. 691, 127 S.E. 46 (1924); *State v. Belknap,* 39 W.Va. 427, 19 S.E. 507 (1894); *Dykeman v. Commonwealth,* 201 Va. 807, 113 S.E.2d 867 (1960); F. Cleckley, *supra,* § 52E (1977).[11]

■ A related and more appropriate basis is that of an adoptive admission where the party by words or conduct signifies his acquiescence or approval of an out-of-court statement. This frequently comes into play where there is a conversation with the defendant in which the defendant agrees with the remarks of the other party. It is utilized with some caution. *United States v. Handy,* 668 F.2d 407 (8th Cir.1982); *United States v. Murray,* 618 F.2d 892 (2nd Cir.1980); 4 J. Wigmore, Evidence §§ 1071–75 (3rd ed. 1940); McCormick on Evidence § 269 (3d ed. 1984); 4 J. Weinstein & M. Berger, Weinstein's Evidence § 801(d)(2)(B)(01) (1984).

In the present case, the defendant verbally indicated two things to the witness. First, it was a tape of his conversation. Second, it was recorded while he was under truth serum. From an adoptive standpoint, we also have the fact that the defendant produced and played the tape voluntarily at the home of an acquaintance without any prior urging on the part of the witness or anyone else. Additionally, the statements

10. In *State v. Taggart,* 14 Or.App. 408, 419–20, 512 P.2d 1359, 1365 (1973), *cert. denied,* 419 U.S. 877, 95 S.Ct. 141, 42 L.Ed.2d 117 (1974), the court addressed this point:

"'The authorities agree that the subject pours out both fact and fancy. Dr. Lorenz observes: "Much care must be exercised by the experimenter to evaluate the results. He must discriminate, if possible, what is the product of fantasy and what of fact."

"'Although some persons retain their characteristic defenses even under influence of the drug, the degree and effect of suggestibility are greatly heightened.

"'In psychotherapy, the physician's skill depends on his obtaining recitals of internal, external, and mixed events, and on his ability to suggest developments and reconciliations. In law, we reject for untrustworthiness a

method of interrogation which mingles external events with imaginary occurrences and shapes the answers of the subject to the suggestions of the examiner. Thus, however striking their medical uses, the drugs are not "truth serums"; they dissolve inhibitions and tend to stimulate unrepressed expressions of external fact, of fancy, and of suggestion.' Despres, Legal Aspects of Drug-Induced Statements, 14 U.Chi.L.Rev. 600, 605 (1946–47)."

11. In criminal cases, the tacit admission rule is ordinarily not available where the defendant is in custody and elects to exercise his constitutional right to remain silent. *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977), *relying on Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); F. Cleckley, *supra,* § 52E(2).

recalled by the witness from the defendant's tape bore rather substantial indicia of trustworthiness by the physical evidence of the location of the victim's head wound and by the fact that the wound was made at close range by a rifle.

To some extent, the issue raised is analogous to our well established law that permits the introduction of an incriminating statement made by a defendant when he is not in custody or being interrogated by law enforcement officials, as set out in Syllabus Point 1 of *State v. Johnson*, 159 W.Va. 682, 226 S.E.2d 442 (1976):

> "A spontaneous statement by a defendant made prior to any action by a police officer and before an accusation, arrest or custodial interrogation is made or undertaken by the police may be admitted into evidence without the voluntariness thereof first having been determined in an *in camera* hearing."

*See also State v. Young*, 173 W.Va. 1, 311 S.E.2d 118 (1983); *State ex rel. White v. Mohn*, 168 W.Va. 211, 283 S.E.2d 914 (1981).

 We believe that under the facts here presented the defendant's actions in playing his tape constituted an adoptive admission.

## IV.

The defendant also contends that the trial court's instructions on self-defense were not proper, that the trial court erred in refusing to dismiss the indictment against him, and that the trial court erred in refusing to grant a new trial based on newly discovered evidence.

We conclude after having carefully reviewed the record and the briefs that none of these asserted errors are sufficiently meritorious to warrant either detailed discussion or reversal of the conviction. The trial court fully and fairly instructed the jury concerning the law of self-defense as applicable to the facts of the instant case, including the defendant's right to retreat from mutual physical combat and to thereafter use deadly force to save his own life or to protect himself from great bodily harm.

 The defendant's motion for a new trial was based on newly discovered evidence. One of the State's witnesses, who testified about incriminating oral statements made by the defendant, recanted her testimony after trial. She stated that she had lied at trial because she had been threatened by another State's witness. Her testimony at trial was that after the homicide, the defendant had said something to the effect that there had been a fight with the victim and they had blown him away. The requirements for awarding a new trial based on newly discovered evidence are set out in the Syllabus of *State v. Frazier*, 162 W.Va. 935, 253 S.E.2d 534 (1979):

> " 'A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side.' Syllabus Point 1, *Halstead v. Horton*, 38 W.Va. 727, 18 S.E. 953 (1894)."

*See also State v. King*, 173 W.Va. 164, 313 S.E.2d 440 (1984); *State v. Stewart*, 161 W.Va. 127, 239 S.E.2d 777 (1977).

 Taking the State's evidence as a whole, it is clear that her testimony was only cumulative. The State's key witness, James Slayton, testified that he went with the defendant to obtain the victim's body and dispose of it at another location. During the course of this episode, the defendant indicated that he had killed the victim. Furthermore, Slayton's brother also testified that the defendant had advised him

that he had killed someone and wanted him to hide the gun. Slayton's brother advised the defendant to hide the gun in an abandoned car where it was found by the police. We conclude that the trial court was correct in denying the motion for new trial.

 Any error with respect to the absence of a prior written order summoning the special grand jury that indicated the defendant was not such as to deprive the grand jury of its power to indict and was harmless. The parties stipulated that the special grand jury was properly selected. The claimed error stems from the fact that the trial court failed to enter a written order directing the jury commissioners to select the special grand jury.[12] The trial court properly held that under the circumstances, the lack of an order did not invalidate the indictment. *See State v. Nuckols,* 152 W.Va. 736, 166 S.E.2d 3 (1968); *State ex rel. Mynes v. Kessel,* 152 W.Va. 37, 158 S.E.2d 896 (1968).

For the foregoing reasons, the defendant's second degree murder conviction in the Circuit Court of Cabell County is affirmed.

Affirmed.

---

**12.** W.Va.Code, 52–2–14, provides, in material part:

"Whenever it appears to the judge of any court of record having criminal jurisdiction that there may be possible offenses against the criminal laws of this State which because of their complexity and involvement may re-

quire a grand jury to sit for an extended period of time, he may, pursuant to the provisions of this section, order a grand jury to be drawn and to attend any special, regular or adjourned term of such court in addition to any other grand jury attending any such term of court."