BETTY ANN WEINBENDER

v.

COMMONWEALTH OF VIRGINIA

No. 0044-88-3

Decided November 20, 1990

En Banc April 23, 1991

COUNSEL

Anthony F. Anderson (Melissa W. Friedman, on briefs), for appellant.

M. Katharine Spong, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**MOON, J.**—Betty Weinbender contends the court erred in her driving under the influence trial by allowing the arresting officer to testify as to an out of court statement made in her presence by another driver as to the time of their accident. We hold that the evidence supported a finding that the statement was one which the defendant would have felt herself called upon to deny in the event she did not intend to express acquiescence by her failure to do so. Therefore, the statement was admissible as an adoptive admission to prove that the blood test was administered within the time prescribed by law. We affirm the conviction.

The essential facts are not in dispute. State Trooper D. T. Gaskins was dispatched to an automobile accident in Botetourt County at approximately 1:25 a.m. on the morning of July 11, 1987. When he arrived at the scene, Trooper Gaskins found a police vehicle operated by Deputy Tommy Guill of the Botetourt County Sheriff's Department which had been struck in the left rear by Weinbender's vehicle. Gaskins asked both individuals to sit in his vehicle. Weinbender staggered slightly while walking toward the trooper's vehicle and fell against her car at one point. She sat in the front passenger seat and Deputy Guill sat in the rear seat while Trooper Gaskins took general accident information from Guill.

Trooper Gaskins noticed an odor of alcohol about Weinbender and asked her what she had to drink. She replied that she had consumed one glass of wine earlier at a friend's house before driving home. Gaskins offered her a preliminary breath test, but did not administer any field sobriety tests. At 2:17 a.m., he placed Weinbender under arrest for driving while intoxicated. He advised her of Virginia's implied consent law and arranged for a blood test to be taken. Gaskins transported Weinbender to the magistrate's office and obtained an arrest warrant at 3:25 a.m.

At Weinbender's trial on December 7, 1987, Trooper Gaskins was called as the Commonwealth's only witness to prove that Weinbender was arrested within two hours of operating her vehicle, as required by Code § 18.2-268 in order to use the chemical test to determine the alcoholic content of her blood. Gaskins testified that Deputy Guill told him that the accident occurred at 12:56 a.m. Defense counsel objected to Gaskins' testimony regarding the time of the accident as inadmissible hearsay. The court ruled that Deputy Guill's statement had been made in Weinbender's presence and was, therefore, an adoptive admission by her. The blood analysis certificate was then admitted into evidence, showing Weinbender's blood alcohol content to be 0.11 percent.

Weinbender testified she had been to a friend's house and consumed one glass of wine. She said she left between 11:10 and 11:15 p.m. and was on her way home "in the early morning hours" when the accident occurred.

■ The test for an adoptive admission "is whether [persons] similarly situated would have felt themselves called upon to deny the statements affecting them in the event they did not intend to express acquiescence by their failure to do so." *Owens v. Commonwealth*, 186 Va. 689, 699, 43 S.E.2d 895, 899 (1947).

With regard to the reliability of such statements

the courts have evolved a variety of safeguarding requirements against misuse, of which the following are illustrative. (1) The statement must have been heard by the party claimed to have acquiesced. (2) It must have been understood by him. (3) The subject matter must have been within his knowledge. . . . (4) Physical or emotional impediments

to responding must not be present. (5) The personal makeup of the speaker, e.g., young child, or his relationship to the party or the event, e.g., bystander, may be such as to make it unreasonable to expect a denial. (6) Probably most important of all, the statement itself must be such as would, if untrue, call for a denial under the circumstances. The list is not an exclusive one, and other factors will suggest themselves. The essential inquiry in each case is whether a reasonable person would have denied under the circumstances, with answers not lending themselves readily to mechanical formulations.

E. Cleary, *McCormick On Evidence* § 270, at 800-01 (3d ed. 1984).

Here, the statement was made in the presence of the defendant, who was seated next to the investigating officer, by the other driver sitting in the back seat of the police car. The subject under discussion among all three persons was the circumstances surrounding the accident. Thus, the trial judge could have inferred that the defendant heard the statement. *See Baughan v. Commonwealth*, 206 Va. 28, 32, 141 S.E.2d 750, 754 (1965) (where the court held admissible statements made in the defendant's "presence under such circumstances that he was bound to have heard and understood them"); *see also Friedland v. Allis Chalmers Co.*, 159 Ill. App. 3d 1, 7, 511 N.E.2d 1199, 1204 (1987) (where the court held that although a defendant claimed not to have heard plaintiff's version of the accident given while plaintiff and defendant sat in the police squad car talking to a police officer, the trial court did not err in admitting the evidence).

Furthermore, evidence in the record establishes that the defendant responded to other questions by the investigating police officer during the time she was in the automobile with him and the declarant. Therefore, the trial judge could have inferred that she was capable of understanding what she heard. The trial judge could have believed that she would have known when the accident occurred. She testified at trial to the time within five minutes that she left her friend's home and started home. The trial judge could have found that there were no physical or emotional impediments to appellant's speaking up. She had the presence of mind to put forth in the police cruiser a version of the accident and of her activities which was most advantageous to her.

Whether the personal makeup of the speaker was such as to make it unreasonable to expect a denial is an issue best left to the trial judge who observes and hears the witnesses as they testify. While the statement was made by a police officer during an investigation of an automobile accident, the officer who made the statement was not conducting the investigation and was not acting in his official capacity at the time.

■ The principle question is whether, under the circumstances, the statement was one which, if untrue, called for a denial. E. Cleary, *supra*, § 270, at 800-01; 4 J. Wigmore, *Wigmore on Evidence* § 1071, at 102 (3d ed. 1922).

■ An admission by silence need not implicate the party against whom the statement is used in a crime. In *Tillman v. Commonwealth*, 185 Va. 46, 37 S.E.2d 768 (1946), a police officer said to the defendant that the defendant knew that defendant's wife was a prostitute and had been plying her trade for years in her home. The Court said that "[t]he jury had the right to consider the failure of the accused immediately to resent and deny the imputation, as an implied admission of the truth of the statement." *Id.* at 56, 37 S.E.2d at 733. In this case, Guill's statement does not accuse the defendant of a crime. The issue, therefore, is whether under the circumstances, if the statement was not true, the defendant would have reacted to it.

■ The meeting of two drivers involved in an accident in the investigating officer's police car to discuss the accident is not just a casual occurrence. A rational trier of fact could conclude that a reasonable person under the circumstances would react if one party to an accident told the police officer that the accident happened thirty-nine minutes before it actually happened. The fact that Weinbender did not foresee the legal consequences of the statement may or may not be be a fact for the trial judge to consider with regard to the weight to be given her failure to react, but none of the authorities list such a factor as essential to the admissibility of such a statement. *See* E. Cleary, *supra*, § 270, at 800-01; J. Wigmore, *supra*, § 1071, at 102.

We hold the trial judge did not err in finding that Guill's statement as to the time of the accident was adopted by Weinbender and was, thus, admissible. Therefore, we affirm the conviction.

*Affirmed.*

Willis, J., concurred.

Koontz, C.J., dissenting.

I respectfully dissent from the majority opinion. There is no dispute that the testimony of Trooper Gaskins concerning the time of the accident was hearsay. In my view, the adoptive admission exception to the hearsay rule is not applicable to the facts in this case.

I agree with the majority that the Virginia test regarding the use of adoptive admissions as an exception to the hearsay rule "is whether [persons] similarly situated would have felt themselves called upon to deny the statements affecting them in the event they did not intend to express acquiescence by their failure to do so." *Owens v. Commonwealth*, 186 Va. 689, 699, 43 S.E.2d 895, 899 (1947); *see also Artis v. Commonwealth*, 213 Va. 220, 224-25, 191 S.E.2d 190, 193 (1972); *Baughan v. Commonwealth*, 206 Va. 28, 32, 141 S.E.2d 750, 753-54 (1965); *Dykeman v. Commonwealth*, 201 Va. 807, 812, 113 S.E.2d 867, 871 (1960); *Knight v. Commonwealth*, 196 Va. 433, 436-37, 83 S.E.2d 738, 740 (1954); *Plymale v. Commonwealth*, 195 Va. 582, 591-92, 79 S.E.2d 610, 618 (1954), *rev'd on other grounds*, 238 Va. 341, 385 S.E.2d 50 (1989), *cert. denied*, 494 U.S. 1074 (1990).

I further agree with the majority that the facts in this case support the conclusion that Deputy Guill's statement concerning the time of the accident was made in Weinbender's presence, that she heard and understood it, and that there were no physical or emotional impediments to her "speaking up." Additionally, I also agree that the trial judge could have believed that Weinbender would have known when the accident occurred and that it would not have been unreasonable for her to have contradicted a police officer on that fact. The record likewise does not support an assumption that she was intimidated by Deputy Guill and she makes no such assertion on appeal. None of these circumstances, however, support a conclusion that Weinbender or other persons similarly situated would have felt called upon to deny the time of the accident as stated by Deputy Guill.

The adoptive admissions exception to the hearsay rule remains an *exception* and is not so broad as to encompass all undenied

statements made in a person's presence even though such statements are heard, understood and affect that person. The phrase "felt themselves called upon to deny" within the definition of this exception contemplates a degree of human compulsion to deny the statements if one does not intend to equate silence with acquiescence.

In the present case, when Trooper Gaskins arrived at the scene, he obtained the general accident information, primarily from Deputy Guill. Weinbender was present while Gaskins obtained this information. There was no dispute that an accident had occurred and that Weinbender was the operator of one of the vehicles involved. Deputy Guill's comment concerning the time of the accident was made during the routine exchange of information concerning the circumstances surrounding the accident. This comment was not directed to Weinbender and did not accuse her of any wrongdoing. Weinbender was not asked when the accident occurred.

During this process, Trooper Gaskins noticed an odor of alcohol about Weinbender and asked her what she had to drink. It is clear that at that point the only unresolved issue confronting Trooper Gaskins was whether the accident resulted from Weinbender's driving while intoxicated. Weinbender was then charged with a violation of Code § 18.2-266. In the context of the application of the adoptive admissions exception to the hearsay rule, it is clear that the significance of the time of the accident would not have been readily apparent to Weinbender or other persons similarly situated when Deputy Guill's statement was made. Accordingly, there would be no compulsion or incentive to deny it. Moreover, the time of the accident had no significance and did not affect Weinbender until, at trial, the Commonwealth sought to establish, pursuant to Code § 18.2-268(B), that she was arrested for a violation of Code § 18.2-266 within two hours of the alleged offense in order to introduce the certificate of analysis which established her blood alcohol content at 0.11 percent. *See Overbee v. Commonwealth*, 227 Va. 238, 242, 315 S.E.2d 242, 244 (1984). Under these circumstances, it strains logic and is contrary to human experience to conclude that Weinbender, or persons similarly situated, would have felt called upon to deny Deputy Guill's statement concerning the time of the accident in the event she did not agree with his assertion. The most that can be concluded from the

facts and circumstances of this case is that Deputy Guill's comment was made in Weinbender's presence and that she made no comment about it.

Without the hearsay statement of Trooper Gaskins, there were no grounds for admitting the certificate of analysis into evidence. Weinbender's testimony at trial does not establish precisely when the accident occurred. Accordingly, I would hold that the trial court erred in admitting Trooper Gaskins' hearsay statement.

The certificate of analysis was critical to the prosecution's case against Weinbender. The Commonwealth's attorney stated repeatedly that he was proceeding under the "per se" rule, referring to Code § 18.2-266(i). Under this subsection, a blood alcohol concentration of 0.10 percent or more by weight by volume as indicated by a chemical test administered pursuant to Code § 18.2-268 creates a rebuttable presumption that the measurement accurately reflects the defendant's blood alcohol concentration at the time of driving. *Davis v. Commonwealth*, 8 Va. App. 291, 298, 381 S.E.2d 11, 15 (1989).[1] Because the Commonwealth could not have proved its case under Code § 18.2-266(i) without the test results, Weinbender's conviction cannot stand.

For these reasons, I would reverse the decision of the trial court in this case and remand for a new trial, if the Commonwealth be so advised.

---

[1] This case was decided by the trial judge prior to *Davis*, and it appears from the record that the Commonwealth relied on the certificate of analysis as conclusive proof of the offense while successfully objecting to any rebuttable evidence on the issue of Weinbender's intoxication.