COURT OF APPEALS OF VIRGINIA

Present: Judges Coleman, Elder and Senior Judge Cole
Argued at Richmond, Virginia


JOHN A. WALDROP, JR.
                                              OPINION BY
v.   Record No. 1343-95-2           JUDGE LARRY G. ELDER
                                          DECEMBER 17, 1996
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF HENRICO COUNTY
                 James M. Lumpkin, Judge Designate

          Anthony F. Troy (Claudia T. Salomon; Michael
          Morchower; Christopher C. Booberg; Mays &
          Valentine; Morchower, Luxton & Whaley, on
          briefs), for appellant.

          Kathleen B. Martin, Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General, on brief), for appellee.


     John A. Waldrop (appellant) appeals his conviction of two

counts of perjury for making a false statement in a campaign

finance report. He contends that the trial court erred in

denying his motion for a mistrial because the Commonwealth's

attorney during his opening statement commented on Waldrop's

Fifth Amendment right to remain silent. He also contends that

the evidence was insufficient to support his convictions for

perjury because (1) his campaign finance report listed all

contributions as required by law; (2) the Commonwealth failed to

prove that he was under oath when he made the alleged

misstatements; and (3) if he made a misstatement, the evidence

failed to prove that it was willful. For the reasons that

follow, we affirm.

I.

FACTS

In November, 1991, appellant was re-elected to his fifth term on the Henrico County Board of Supervisors. Due to appellant's slight margin of victory, his opponent filed a petition for a recount. Code § 24.1-249 (1985). Appellant hired an attorney to represent him in the recount proceeding.

In December, 1991, appellant received three checks from supporters intended to defray the cost of the recount proceeding. Appellant accepted a check from a business owned by a supporter, Kenny Graham, in the amount of $1,000 on December 2. On December 13, another business owned by a supporter of appellant, E. Carlton Wilton, Sr., issued him a check in the amount of $500. Appellant deposited these two checks into his personal checking account, which he testified was also his "defense fund." On December 19, appellant received a check from a third supporter, Henry Wilton, for $750, which he deposited into the separate checking account that he had previously designated for his campaign funds.

On January 15, 1992, appellant filed his report of candidate campaign contributions and expenditures (report) as required by the Fair Election Practices Act (Act).[1] Code § 24.1-247.2(C)

---

[1] The Fair Elections Practices Act was amended and recodified in 1993 and is now called the Campaign Finance Disclosure Act. Code § 24.2-900, et seq. (1993, Supp. 1996); 1993 Va. Acts 812, 872.

(1985, Supp. 1991).  In schedule A of the report, appellant was required to list all "contributions over $100."  While this list included the check from Henry Wilton, it excluded the checks from Mr. Graham and E. Carlton Wilton, respectively.  Appellant signed the report under an affirmation, which stated:

> Under penalty of perjury, I declare that I have examined this report which covers the period Nov. 26, 1991 through Dec. 31, 1991, including its accompanying summary, reconciliation, schedules and statements and to the best of my knowledge and belief, it is true, correct and complete.

The signature page of the report was notarized by Stuart Inglehart under a written statement that the report had been "[s]ubscribed and sworn to (or affirmed) before" him.

In April, 1995, appellant was indicted for two counts of perjury stemming from the two checks that he had failed to list as contributions in his report.[2]  During the Commonwealth's opening statement, the Commonwealth's attorney made the following remarks:

> That essentially is what I believe the Commonwealth's evidence will reveal.  At the conclusion of the evidence, and let me say, while the Commonwealth has the burden of proof, and I am able to tell you what our evidence will be, because the defendant has no burden of proof he has no obligation to disclose to me what the defense is or what Mr. Waldrop's point of view on this will be, so I can't comment on that for you at this time.  I am just able to tell you what I believe our evidence will be.  I suspect -- and I say this by way of asking you to listen

---

[2] Appellant was tried and acquitted on a third count of perjury regarding a check received in September, 1991.

> closely to the evidence -- I suspect that Mr. Waldrop will allege that these are minor bookkeeping errors that were overlooked by him at the time, and I think that's why it's important for you to listen to the evidence, to follow the money, where it went, to see if this type of conduct constitutes bookkeeping mistakes and errors, or deliberate purposeful, willful conduct on his part. It may well be that when Mr. Morchower[3] sits down, the issue will have been narrowed by him to that particular aspect of all the evidence, and you will know exactly what to look for when you're listening to the testimony of the witnesses.

Following the Commonwealth's opening statement, appellant's counsel moved for a mistrial, claiming that the Commonwealth's attorney had unconstitutionally commented on appellant's right not to testify at his trial. The trial court denied the motion.

At trial, the evidence proved that appellant failed to report the two checks he received for the legal expenses of the recount proceeding as contributions in his report of January 15, 1992. However, the evidence is in conflict on whether appellant signed the report under the oath required by the Act and whether appellant's statement was willful. Although the record proved appellant signed the report "under penalty of perjury" and that the report reflected that it was signed and affirmed before a notary, appellant testified that he did not read the signature page before he signed it and that the notary failed to administer an oath. Appellant also testified that he was a veteran of four prior elections and was familiar with the reporting requirements

---

[3] Mr. Morchower was appellant's lead counsel at trial.

-4-

under the Act.  The notary testified that although he had asked appellant during the 1987 election if he had read the oath, he had ceased this practice in 1991.

Regarding the issue of willfulness, the Commonwealth's evidence proved that appellant received and deposited the checks from Mr. Graham and E. Carlton Wilton and then did not report the checks as contributions on his report of January 15, 1992. Appellant testified that his attorney initially advised him that gifts of money intended to defray the cost of the recount proceeding were not campaign contributions and could be deposited into his personal account.  Appellant also testified that later, sometime between December 25, 1991 and mid-January, 1992, he learned during a conference call with the secretary of the State Board of Elections that he was required to treat monetary gifts relating to his recount expenses as campaign contributions.  The former secretary testified that he could not remember speaking with appellant during this period.

Following the Commonwealth's case-in-chief and again at the conclusion of the evidence, appellant moved to strike the evidence.  The trial court denied the motion and the jury found appellant guilty of two counts of perjury.  Following his conviction, appellant filed a motion to set aside the verdict on the ground that money received for a recount proceeding cannot be construed as a "campaign contribution" that a candidate must report.  The trial court denied this motion.

II.

COMMENT IN OPENING STATEMENT ON FIFTH AMENDMENT RIGHTS

Appellant contends that the trial court erred when it denied his motion for a mistrial because the Commonwealth's attorney's comments in his opening statement violated his Fifth Amendment right to remain silent by compelling him to testify at his trial. We disagree.

It is well established that any comment made by a Commonwealth's attorney "referring to the defendant's election not to testify is a violation of his rights against self-incrimination" guaranteed by the Fifth Amendment of the United States Constitution. Johnson v. Commonwealth, 236 Va. 48, 50, 372 S.E.2d 134, 136 (1988) (citing Griffin v. California, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965)). In addition, the accused's right to remain silent at trial prohibits "the prosecutor's use of any language or device which compels a defendant to testify," including those made in opening statements. State v. Pierce, 231 Neb. 966, 978, 439 N.W.2d 435, 444 (1989); see State v. Turner, 433 A.2d 397, 401 (Me. 1981); Clark v. State, 256 Ark. 658, 661, 509 S.W.2d 812, 815 (1974) (stating that pre-evidentiary coercion is just as forbidden as post-evidentiary comment).

In determining whether a comment relating to an accused's failure to testify is constitutionally forbidden, the test is whether, in the circumstances of the particular case, the

language used was either (1) manifestly intended to comment on the failure of the accused to testify, or (2) of such character that the jury would naturally and necessarily take it to be such a comment. Johnson, 236 Va. at 50, 372 S.E.2d at 136 (citing Hines v. Commonwealth, 217 Va. 905, 907, 234 S.E.2d, 262, 263 (1977)). "When comments relating to an accused's opportunity to testify are followed by his actual testimony, the relevant inquiry is whether his testimony in effect was coerced or compelled by the prior comment." United States v. Corleo, 576 F.2d 846, 850 (10th Cir. 1978), cert. denied, 439 U.S. 850, 99 S. Ct. 153, 58 L.E.2d 152 (1978). One factor of particular concern in pre-testimony comments is whether the Commonwealth's attorney challenged the jury to observe whether or not the accused testified. Pierce, 231 Neb. at 978, 439 N.W.2d at 444 (citing Coleman v. The State, 111 Ind. 563, 566, 13 N.E. 100, 101 (1887)).

In this case, we hold that the comments of the Commonwealth's attorney did not violate appellant's Fifth Amendment right not to testify. The Commonwealth's attorney said that he was unsure of "Mr. Waldrop's point of view" but that he suspected that "Mr. Waldrop will allege that these are minor bookkeeping errors that were overlooked by him" and that Mr. Morchower, appellant's attorney, may narrow the issue to "that particular aspect of all the evidence" by the time he "sits down." When viewed in context, the Commonwealth's attorney's

comments were neither manifestly intended nor likely to be taken by the jury as a comment on appellant's right to remain silent. Immediately after appellant made his motion for a mistrial, the Commonwealth's attorney explained to the court that he was "referring to a defense in the matter" and did not intend to represent to the jury that appellant would testify.

In addition, the character of the statement was such that the jury would have understood it as a comment on the Commonwealth's case and the issues involved and not as a comment on whether appellant would testify. The Commonwealth's attorney stated that appellant had no obligation to disclose his "point of view" and that he was in no position to comment on the substance of appellant's defense. He then stated that he "suspected" appellant would assert as a defense that the false statement on his report was not willful because it resulted from an inadvertent bookkeeping error. These statements were a comment on the nature of the Commonwealth's evidence offered to prove the "willfulness" element of its case rather than comments on the meaning of appellant's subsequent decision whether to testify. We find no indication in the record that the purpose or effect of the Commonwealth's attorney's comment was to coerce appellant to testify. The statement neither raised the expectation in the jury's mind that appellant would testify nor challenged the jury to notice and possibly draw an inference from whether or not appellant testified.

### III.
### CAMPAIGN CONTRIBUTIONS UNDER THE

### FAIR ELECTIONS PRACTICES ACT

Appellant was convicted under Code § 24.1-279, a statute that expanded the crime of perjury under Code § 18.2-434 to include willfully false statements made while under oath in reports required by Virginia election laws.[4]  Appellant's perjury conviction was based on his omission of Mr. Graham's and E. Carlton Wilton's checks from a report requiring the disclosure of all contributions to his campaign.  That report was signified as "true, correct and complete."  Appellant contends that the evidence fails as a matter of law to prove a violation of the Act because money given to defray the cost of a recount proceeding is not a contribution within the meaning of the reporting requirements.  Appellant argues that recount money is not a "campaign" contribution because a person defending a recount proceeding is no longer a "candidate" and because a recount proceeding is not an "election."  We disagree.

We hold that money received after an election that is intended to defray the expenses of a recount proceeding was a

_____

[4]  In 1991, Code § 24.1-279 stated:

Any wilfully false, fraudulent, or misleading statement
or entry made by any person in any statement or account
under oath required by this title shall constitute the
crime of perjury, and be punishable as such according
to the laws of this Commonwealth.

(1985) (amended and recodified at Code § 24.2-1016 (1993)).

"contribution" under the 1991 version of the Act.[5]  In 1991, the Act required candidates for local office to periodically file reports with the local electoral board listing all contributions and expenditures.  Code §§ 24.1-257.2(C), -258 (Supp. 1991).  Regarding contributions, the Act required candidates to report every collection or receipt of "money, services or other things of value over $100 in relation to his candidacy."  Code § 24.1-255(B) (Supp. 1991).[6]

We hold that recount money in excess of $100 was a contribution under the Act in 1991 because it was money received by a candidate "in relation to his candidacy."  Under Virginia election law, a recount proceeding is literally an extension of the election process.  The Act defined a candidate as "any person who seeks or campaigns for any office of the Commonwealth or any of its governmental units in a primary, general, or special election by the people."  Code § 24.1-1(2) (Supp. 1991).  A candidate is elected when the local electoral board determines which person received the highest number of votes and the secretary issues a certificate of election.  Code §§ 24.1-146

_____

[5]  Code § 24.1-251-263.1 (1985, Supp. 1991).  See supra note 1.

[6]  The relevant part of Code § 24.1-255(B) stated:

It shall be unlawful for any candidate, or anyone . . . collecting, receiving . . . money, services or other things of value over $100 in relation to his candidacy, to fail to report every such collection, receipt . . . as required herein and in this chapter.

(Supp. 1991), -148 (1985), -151 (1985). However, in close races, the losing candidate may appeal the determination of the electoral board by filing a petition for a recount in circuit court. Code §§ 24.1-148 (1985), -249(B) (1985). Following the court-supervised recount, the circuit court declares the final winner of the election. Code § 24.1-250(C), (G) (1985). Thus, the recount is a necessary and integral part of the election. A person defending a recount is a candidate because he or she is still "seeking" election. Code § 24.1-1(2). Because a recount proceeding is directly related to a person's candidacy, recount money in excess of $100 given to a candidate following election day is a "contribution" under the Act. Therefore, we hold that money received to defend a recount is a contribution made to a candidate in relation to his candidacy.

IV.

UNDER OATH

Appellant contends that the evidence at trial was insufficient to prove that he was under oath when he signed his report. We disagree.

When considering the sufficiency of the evidence on appeal to support a criminal conviction, this Court views the evidence in the light most favorable to the Commonwealth. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). On review, this Court does not substitute its judgment for that of the trier of fact. Cable v. Commonwealth, 243 Va. 236, 239, 415

-11-

S.E.2d 218, 220 (1992). Instead, the jury's verdict will not be set aside unless it appears that it is plainly wrong or without supporting evidence. Code § 8.01–680; Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988).

In a prosecution under Code § 24.1–279, the Commonwealth had the burden of proving that appellant was "under oath," which in 1991 entailed swearing or affirming the oath printed on the report before a notary public. Relying on Mendez v. Commonwealth, appellant contends that his perjury conviction cannot be sustained because the evidence failed to prove that he and the notary strictly complied with the formal requirements of an administered oath. 220 Va. 97, 225 S.E.2d 533 (1979). We disagree.

We agree with appellant that Code § 24.1–279 required an administered oath;[7] however, appellant misstates both the holding of Mendez and the law regarding the requirements of the oath element in a perjury prosecution. In Mendez, the defendant agreed to make an affidavit stating that he had never possessed marijuana as a condition of receiving a polygraph examination regarding a pending charge for possession of the drug. Id. at

---

[7] In 1993, the General Assembly amended and recodified this section to eliminate the requirement of an administered oath. Code § 24.2–1016. See Virginia Code Comm'n, Report on the Recodification of Title 21 of the Code of Virginia 166, Sen. Doc. 25, (1993). In its present form, this section punishes any willfully false material statement made on a campaign finance report. Id. In addition, the General Assembly changed the offense punished under this section from perjury to election fraud. Id.

101, S.E.2d at 535. Although the affidavit was voluntarily given and was not required by law, it was signed and acknowledged before a general district court clerk. Id. The defendant was convicted of perjury after he "failed" his polygraph test. Id. at 101-02, S.E.2d at 535. The Virginia Supreme Court reversed the conviction, holding that the oath taken by the defendant was not "lawfully" administered because it was a gratuitous oath that was beyond the statutory authority of the general district court clerk to administer. Id. at 102, S.E.2d at 535.

Although Mendez stands for the proposition that a person commits perjury only if the oath he or she breached was acknowledged before a person with the legal authority to administer the oath, it says nothing about the form the oath must take. Instead, in a prosecution for perjury, no particular form of oath is necessary, and an oath is "sufficient to form the basis of a charge of perjury when there is some form of unequivocal and present act, in the presence of an officer authorized to administer the oath, whereby the [accused] consciously takes on himself the obligation of the oath."[8] 60A Am. Jur. 2d Perjury § 10 (1988); see also 70 C.J.S. Perjury § 27 (1987). Proof that a written oath was signed and acknowledged before a notary public is sufficient to prove that a person

---

[8] Contrary to the assertion of appellant in his brief, the jury instruction given by the trial court regarding the oath element followed this language and was a correct statement of the law.

swears under penalty of perjury to the truth of his campaign report. Moreover, the evidence is sufficient to prove that appellant knew the content of the oath he signed.

Appellant was a veteran of five election campaigns and was familiar with the procedures required under Virginia election law. Prior to the report in question, he had previously signed and filed reports in both the 1991 election and the 1987 election that were notarized by the same notary public. This notary public testified that during the election in 1987 he asked appellant if he had read the affirmation before he signed it "the first couple of times" he notarized a report. Although the notary did not verbally administer an oath to appellant when he signed his report of January 15, 1992, evidence proves that appellant was aware when he signed the oath that he was swearing and affirming the correctness and completeness of his report "under penalty of perjury" and that he consciously undertook this obligation when he signed the document in the presence of this notary.

V.

WILLFULNESS

We also disagree with appellant's contention that the evidence was not sufficient to prove that the omission and misstatement on his report were willfully made. In a prosecution for perjury, the Commonwealth must prove beyond a reasonable doubt that the accused willfully swore falsely. <u>Holz v.</u>

Commonwealth, 220 Va. 876, 880, 263 S.E.2d 426, 428 (1980). When used in a criminal statute, "willfully" ordinarily means "designedly, intentionally or perversely." Lambert v. Commonwealth, 6 Va. App. 360, 363, 367 S.E.2d 745, 746 (1988). Willfulness may be proved by circumstantial evidence. Id. However, an allegedly perjurious statement "will not sustain a charge of perjury when . . . the accused swears to the statement in reliance on his attorney's advice and in the belief that his attorney has correctly advised him as a matter of law." 60A Am. Jur. 2d Perjury § 114.

We hold that the evidence was sufficient to prove that appellant willfully filed his false report. The Commonwealth's evidence proved that appellant, an experienced candidate familiar with the reporting mandates of Virginia election law, received money following the November election that was intended to defray the cost of the recount proceeding and then failed to include this money in his report of contributions that he signed under oath. From these circumstances, a reasonable juror could infer that appellant intentionally did not disclose this money as a contribution in his report and willfully swore falsely that his report was complete.

Appellant argues that the evidence is insufficient because he testified that his omission of the recount money from his report was based on the legal advice of his attorney that recount money was not a contribution within the meaning of the reporting

-15-

requirements.  Appellant testified that he acted on this legal advice when he deposited the checks from Mr. Graham and E. Carlton Wilton into his personal account in December, 1991. However, appellant also testified that during a conference call with the secretary of the State Board of Elections that occurred between December 25, 1991 and mid-January, 1992 he learned that he was required to include recount money in his report. Appellant filed his report under oath on January 15, 1992 and his report listed as a contribution the check he received from Henry Wilton on December 19.  Based on these facts, a reasonable fact finder could conclude that appellant was not relying on the legal advice of his attorney when he signed his report in mid-January, 1992 and that he willfully misstated that his report was "true, correct and complete."

In light of the foregoing reasons, we affirm the conviction of two counts of perjury.

Affirmed.