COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Coleman and Moon[*]
Argued at Salem, Virginia


WILLIAM THOMAS TAYLOR
                                              OPINION BY
v.        Record No. 2083-96-3       JUDGE SAM W. COLEMAN III
                                           FEBRUARY 3, 1998
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF AMHERST COUNTY
                      J. Michael Gamble, Judge

           B. Leigh Drewry, Jr., for appellant.

           Leah A. Darron, Assistant Attorney General
           (James S. Gilmore, III, Attorney General, on
           brief), for appellee.


     The issue in this criminal appeal is whether a defendant's

tacit admission by silence following a police officer's question

in a non-custodial setting was erroneously admitted into evidence

in violation of the constitutional protections afforded by the

Fifth Amendment to the United States Constitution and Article I,

Section 8 of the Virginia Constitution.

     William Thomas Taylor was convicted of possessing a firearm

after having been convicted of a felony in violation of Code

§ 18.2-308.2 and of carrying a concealed weapon in violation of

Code § 18.2-308.  At trial, the Commonwealth introduced evidence

during its case-in-chief that when the investigating officer

asked Taylor, who was being treated at a hospital for injuries

---

[*]When the case was argued Judge Moon presided.  Judge
Fitzpatrick was elected Chief Judge effective November 19, 1997.
 Judge Moon participated in the hearing and decision of this case
prior to his retirement on November 25, 1997.

received in a motor vehicle accident, whether the firearm discovered in Taylor's van belonged to him, Taylor remained silent. The Commonwealth introduced such evidence as a tacit admission from which the fact finder would be permitted to infer that Taylor admitted by his silence that he owned the firearm.[1] We hold that the trial court erred by admitting the evidence because proof that the appellant remained silent impermissibly burdened the exercise of his privilege against compelled self-incrimination under the Fifth Amendment of the United States Constitution and Article I, Section 8 of the Virginia Constitution.

## I. BACKGROUND

When Amherst County Deputy Sheriff Lindy Inge responded to the scene of a single-vehicle accident, he observed the appellant resting against a heavily damaged van. Deputy Inge determined that the appellant was injured and called for an ambulance. While surveying the damage to the van, Inge observed the interior of the van through an open door. He saw a handgun in the driver's door compartment and seized it.

Later, Inge went to the appellant's hospital room to investigate the accident. During the interview, Inge asked the

---

[1]The appellant does not challenge on appeal the evidentiary issue of whether the police officer's question was the type of accusation that would permit the fact finder to infer a tacit admission. See Clemmer v. Commonwealth, 208 Va. 661, 664-66, 159 S.E.2d 664, 665-66 (1968); Weinbender v. Commonwealth, 12 Va. App. 323, 325-28, 398 S.E.2d 106, 107-08 (1990).

appellant whether he owned the gun found in the van.  The
appellant did not respond.

At trial, Inge testified in the Commonwealth's
case-in-chief, over objection by the appellant on constitutional
grounds, that the appellant remained silent in response to the
question regarding ownership of the gun.[2]  The trial court
overruled the objection, and this appeal followed.

## II.  ANALYSIS

This appeal raises fundamental questions about the breadth

[2]The colloquy at trial occurred as follows:

> COMMONWEALTH'S ATTORNEY: Can you tell the
> Judge whether or not you asked Mr. Taylor
> about the pistol?
>
> DEPUTY INGE:  I asked Mr. Taylor about the
> pistol at the hospital, and he just never
> responded with any answer.
>
>         *   *   *   *   *   *   *
>
> DEFENSE COUNSEL:  Judge, I object.  He didn't
> respond, and anything that comes out can't be
> used against the defendant or him exercising
> his right can't be -- the Fifth Amendment
> can't be used against him.

Although the appellant objected to the admissibility of the
evidence on the ground that proof of silence violated the Fifth
Amendment of the United States Constitution, he argues on appeal
that admission of the evidence violates Article I, Section 8 of
the Virginia Constitution and he does not expressly rely upon the
Fifth Amendment of the United States Constitution.  Because the
Virginia and federal constitutional privileges are construed
identically, Flanary v. Commonwealth, 113 Va. 775, 779, 75 S.E.
289, 291 (1912), the appellant's objection at trial on Fifth
Amendment grounds was sufficient to preserve for appeal his
challenge based on Article I, Section 8 of the Virginia
Constitution.  See Rule 5A:18.

- 3 -

and scope of the constitutional privileges against compelled self-incrimination. Article I, Section 8 of the Virginia Constitution provides, in pertinent part, that a person may not "be compelled in any criminal proceeding to give evidence against himself." The privilege under the Virginia Constitution is "in effect, identical" to the privilege against self-incrimination afforded under the Fifth Amendment of the United States Constitution. Flanary v. Commonwealth, 113 Va. 775, 779, 75 S.E. 289, 291 (1912). See also Farmer v. Commonwealth, 12 Va. App. 337, 340, 404 S.E.2d 371, 372 (1991) (en banc). Accordingly, we apply Fifth Amendment principles in addressing the challenge under Article I, Section 8. See Walton v. City of Roanoke, 204 Va. 678, 682, 133 S.E.2d 315, 318 (1963); Farmer, 12 Va. App. at 340, 404 S.E.2d at 372.

The Fifth Amendment to the Federal Constitution provides that "no person shall . . . be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. An individual may assert this privilege whenever the government seeks to compel self-incriminating testimonial or communicative evidence. See Ronald J. Bacigal, Virginia Criminal Procedure § 7-1, at 129, § 7-11, at 154 (3d ed. 1994). The privilege arises before the institution of formal adversarial proceedings, and may be asserted in investigatory as well as adjudicatory settings. See Kastigar v. United States, 406 U.S. 441, 444 (1972); United States ex rel. Savory v. Lane, 832 F.2d 1011, 1017

- 4 -

(7th Cir. 1987) (comparing attachment of Sixth Amendment right to counsel only after a defendant becomes an "accused" with Fifth Amendment mandate that no "person" shall be compelled to provide incriminating evidence against himself).

"The major thrust of the policies undergirding the privilege is to prevent [government] compulsion." Doe v. United States, 487 U.S. 201, 212 (1988). Fundamental to that concept is the principle that the government may not compel a defendant to testify at trial. See Miranda v. Arizona, 384 U.S. 436, 461 (1966); Gosling v. Commonwealth, 14 Va. App. 158, 165-66, 415 S.E.2d 870, 874 (1992). The privilege also extends to situations where an accused or suspect who is in custody may feel compelled to verbally disclose incriminating evidence to a government agent. Miranda, 384 U.S. at 479. In furtherance of this policy, the Supreme Court has held that because government compulsion inheres in the coercive environment of a custodial interrogation following an arrest, an accused must be expressly informed of the Fifth Amendment "right to remain silent" and warned that "anything he says may be used against him." Id. at 461.

This appeal raises a more difficult question than whether the government may require an accused to testify in a criminal proceeding or compel the person to answer questions while in custody. The issue here is whether the Fifth Amendment affords any protection to an individual who is not compelled to testify or speak from having the person's exercise of his fundamental

right to remain silent from being used in a judicial proceeding as an admission of guilt.  In other words, do the constitutional privileges against self-incrimination protect a defendant's pre-custodial silence in response to police questioning from being introduced as substantive evidence of guilt in the government's case-in-chief.[3]  Although the Supreme Court has not expressly addressed this issue,[4] its decisions regarding the government's use of an accused's silence at trial and the scope of the Fifth Amendment privilege are instructive.

In Doyle v. Ohio, 426 U.S. 610 (1976), the Court held that the government's impeachment use of a defendant's silence during a custodial police interrogation violates the defendant's due process rights because the Miranda warnings given after arrest contain "implicit assurances" that the government will not penalize such silence.  426 U.S. at 617.  In so holding, the Court noted that "every post-arrest silence is insolubly ambiguous because of what the State is required to advise" the defendant.  Id. (emphasis added).  In this case, however, the

_____

[3]Our opinion does not affect whether the Commonwealth may in an appropriate situation introduce evidence of silence as a tacit admission to an accusation made by a nongovernmental actor.  See Baughan v. Commonwealth, 206 Va. 28, 141 S.E.2d 750 (1965).

[4]The Supreme Court has implied that the privilege against self-incrimination precludes the substantive use of a defendant's silence.  See United States v. Robinson, 485 U.S. 25, 32 (1988) (holding that prosecutorial comment on defendant's silence in response to defense counsel's claim that the government unfairly denied him opportunity to explain his actions did not violate privilege because "the prosecutorial comment did not treat the defendant's silence as substantive evidence of guilt").

appellant chose to remain silent <u>prior</u> to being placed into custody.  The officer was not required to provide <u>Miranda</u> warnings.  Because the appellant did not rely on any "assurances" in remaining silent before arrest, <u>Doyle</u>'s due process approach that prohibits the government's use of silence, although informative, does not directly apply here.  <u>Cf.</u> <u>Fletcher v. Weir</u>, 455 U.S. 603, 605–06 (1982) (<u>per</u> <u>curiam</u>) (holding that government did not violate defendant's due process rights under <u>Doyle</u> by using his silence as impeachment evidence because he did not rely on implicit assurances from government where government had placed defendant into custody but had not provided him <u>Miranda</u> warnings).

In <u>Griffin v. California</u>, 380 U.S. 609 (1965), the prosecution sought to infer the defendant's guilt by commenting on the defendant's failure to testify at trial.  380 U.S. at 615.  In holding that the Fifth Amendment forbids the substantive use or comment upon Griffin's refusal to testify, the Court broadly stated that the government could not impose a penalty on a defendant's exercise of the Fifth Amendment privilege.  <u>Id.</u> at 614.  The Court determined that this use of Griffin's silence "cuts down on the privilege by making its assertion costly."  <u>Id.</u>  In doing so, <u>Griffin</u> noted that prosecutorial comment on the refusal to testify is a "remnant of the 'inquisitorial system of criminal justice' which the Fifth Amendment outlaws."  <u>Id.</u> (quoting <u>Murphy v. Waterfront Comm'n</u>, 378 U.S. 52, 55 (1964)).

In Jenkins v. Anderson, 447 U.S. 231 (1980), the defendant testified at his murder trial that he killed the victim in self-defense.  447 U.S. at 233.  The prosecution sought to impeach Jenkins' credibility by presenting evidence that, prior to his arrest, he failed to tell anyone that he killed in self-defense.  Id. at 233-34.  Jenkins claimed that proof of his pre-arrest failure to give this explanation violated his Fifth Amendment privilege against self-incrimination.  Id. at 234.

In Jenkins, the Court examined whether the impeachment use of Jenkins' pre-arrest silence impermissibly burdened the exercise of his Fifth Amendment privilege.  Id. at 237-38.  The Court considered "whether [the government's action] impairs to an appreciable extent any of the policies behind the [privilege]," id. at 237, as well as "the legitimacy of the challenged governmental practice."  Id. at 238.

The Jenkins Court recognized that impeachment use of silence may be valuable to the trial process while imposing very little burden upon the individual's right to remain silent.  Id.  The Court noted that impeachment enhances the reliability of trial evidence and allows the government to test the credibility of an accused who voluntarily elects to testify.  Id.  The Court found the burden on the privilege to be minimal when silence is used for impeachment because "impeachment follows the defendant's own decision to cast aside his cloak of silence" by testifying.  Id.  "Once a defendant decides to testify, '[t]he interests of the

other party and regard for the function of the courts of justice to ascertain the truth become relevant and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination.'" Id. (quoting Brown v. United States, 356 U.S. 148, 156 (1958)). Accordingly, the impeachment use of Jenkins' silence did not "impermissibly burden" his exercise of the privilege and was, thus, allowable under the Fifth Amendment.[5] Jenkins, 447 U.S. at 238.

As Griffin and Jenkins make clear, in defining the protection that the Fifth Amendment provides against the government's using a person's silence as evidence, we must examine the burden on the exercise of the privilege imposed by the government's practice. See Dean v. Commonwealth, 209 Va. 666, 670, 166 S.E.2d 228, 231 (1969) (relying on Griffin and determining that Fifth Amendment precludes prosecution's use of a defendant's refusal to testify in another trial because "[t]he value of constitutional privileges is largely destroyed if persons can be penalized from relying on them" (quoting Grunewald v. United States, 353 U.S. 391, 425 (1957) (Black, J. concurring))). Furthermore, we must consider the utility of the government's use of silence in the trial process. Jenkins, 447 U.S. at 238. Applying the Supreme Court's approach, we balance

---

[5]In Jenkins, Justice Powell noted, but reserved comment on, the issue before us as to whether the privilege foreclosed the government's substantive use of a defendant's pre-arrest silence. See 447 U.S. at 236 n.2.

the government's interest in using the appellant's pre-arrest silence as substantive evidence of guilt against the burden such use imposes on the policies underlying the privilege against self-incrimination.[6]  Cf. Miranda, 384 U.S. at 460-61 ("The privilege . . . has always been [considered] 'as broad as the mischief against which it seeks to guard.'" (quoting Counselman v. Hitchcock, 142 U.S. 547, 562 (1892))).

[6]Although the Commonwealth contends that the Fifth Amendment affords no protection for use of a defendant's silence unless government coercion exists from a custodial or arrest interrogation, a number of courts have applied Griffin's broad mandate that the Fifth Amendment forbids "comment on the accused's silence" to preclude the substantive use of any silence exercised by the defendant.  See, e.g., United States v. Burson, 952 F.2d 1196, 1200-01 (10th Cir. 1991); Coppola v. Powell, 878 F.2d 1562, 1567-68 (1st Cir. 1989); United States ex rel. Savory v. Lane, 832 F.2d 1011, 1018 (7th Cir. 1987); State v. Easter, 922 P.2d 1285, 1290-91 (Wash. 1996).  The Supreme Court has yet to decide whether pre-arrest silence is "privileged" in the same manner as a defendant's refusal to testify.

Several courts have held, as the Commonwealth urges that we hold, that evidence of an accused's pre-arrest silence does not violate the Fifth Amendment in the absence of government compulsion to speak or remain silent prior to arrest.  See, e.g., United States v. Zanabria, 74 F.3d 590, 593 (5th Cir. 1996); United States v. Rivera, 944 F.2d 1563, 1568 (11th Cir. 1991); State v. Dreher, 695 A.2d 672, 704-06 (N.J. Super. Ct. App. Div. 1997); State v. Houle, 642 A.2d 1178, 1181 (Vt. 1994).  In so holding, those courts adopted the rationale espoused by Justice Stevens in his concurrence to Jenkins.  According to Justice Stevens, "[w]hen a citizen is under no official compulsion to speak or to remain silent . . . his voluntary decision to do so raises [no] issue under the Fifth Amendment."  Jenkins, 447 U.S. at 241 (Stevens, J. concurring).  Justice Stevens further opined that pre-arrest silence may be used "not only for impeachment but also in rebuttal even had [the defendant] not taken the stand."  Id. at 244 n.7 (Stevens, J. concurring).  The majority in Jenkins did not embrace Justice Stevens' approach.  It considered whether the Fifth Amendment privilege had been "burdened impermissibly."  Id. at 238.  We follow the approach employed by the Jenkins majority.

The Commonwealth's sole objective in introducing evidence of the appellant's silence was as substantive evidence to prove his guilt. Cf. Baxter v. Palmigiano, 425 U.S. 308, 319 (1976) (distinguishing government practice in Griffin from substantive use of silence in prison disciplinary proceeding because such proceedings involve correctional process, not criminal process, and entail important state interests other than conviction for crime). Here, the appellant did not testify. Thus, unlike as in Jenkins, the Commonwealth's use of the appellant's silence did not "enhance the reliability of the criminal process" through impeachment because the appellant's credibility was not at issue. Jenkins, 447 U.S. at 238. Rather, the Commonwealth sought to use the appellant's silence in response to Deputy Inge's incriminating question as to ownership of the gun as a tacit admission that appellant possessed the gun. The probative value of the evidence as an admission is doubtful at best because Deputy Inge's question was not so clearly accusatory that it satisfied the requirements for a tacit admission of guilt.[7]

---

[7]Generally, where an accusatory statement is made that a person who considered himself inculpable would deny, the person's silence in the face of the accusation may be admitted as a tacit admission. See generally, Weinbender v. Commonwealth, 12 Va. App. 323, 398 S.E.2d 106 (1990); E. Cleary, McCormick on Evidence § 160 (1988) at 650-51. In certain circumstances, a question may not constitute an accusation for purposes of the tacit admission rule. Compare United States v. Hove, 52 F.3d 233, 237 (9th Cir. 1995) (investigator's questioning as to why defendant executed various cashier's checks on same day was not accusation of "structuring" larceny transactions), with Commonwealth v. Olszewski, 625 N.E.2d 529, 533 (Mass. 1993) (friend's question which asks "[w]hy did you do it?" posed to defendant approximately two weeks after murder was accusation of murder),

Moreover, appellant may have chosen to not answer the question and to remain silent for any number of reasons.[8]  Accordingly, the Commonwealth's substantive use of the appellant's silence did not significantly "advance[] the truth-finding function of the criminal trial."  Jenkins, 447 U.S. at 238.

Conversely, the substantive use of the appellant's pre-arrest silence substantially burdened the policies underlying the privilege against requiring a person to give statements that may be incriminating.[9]  First, such use offends the privilege's

(..continued)
and State v. Pisauro, 540 P.2d 447, 448, 450 (Wash. App. 1975) (question responding to defendant's statement that guns "came from California" which asks whether the guns are stolen held an accusation).

[8]Several courts have held that a person may remain silent in the face of police accusations or questions for reasons other than acquiescence to an accusation of guilt.  See, e.g., State v. Daniels, 556 A.2d 1040, 1046 (Conn. App. 1989) (distrust or hostility toward law enforcement personnel); Silvernail v. State, 777 P.2d 1169 (Alaska App. 1989) (perception that denial will be met with disbelief and efforts to exonerate are futile); Farley v. State, 717 P.2d 111, 112 (Okla. Crim. App. 1986) (belief that because innocent denial not required); People v. Conyers, 420 N.E.2d 933, 935 (N.Y. 1981) (vague awareness of a legal right to remain silent); cf. United States v. Hale, 422 U.S. 171, 176 (1975) ("In most circumstances silence is so ambiguous that it is of little probative value.").  In this vein, many courts have excluded such evidence because its prejudicial effect outweighs its slight probative value.  Id.

[9]The Supreme Court articulated the policies underlying the Fifth Amendment privilege against self-incrimination in Murphy v. Waterfront Comm'n, 378 U.S. 52 (1964).  The Court stated that the privilege was founded on:

> [an] unwillingness to subject those suspected
> of crime to the cruel trilemma of
> self-accusation, perjury or contempt; [a]
> preference for an accusatorial rather than an
> inquisitorial system of criminal
> justice . . . our sense of fair play which

unwillingness to subject persons to the "cruel trilemma" of perjury, contempt or self-accusation.  Murphy, 378 U.S. at 55. Were we to hold that silence in response to a police officer's question may be used as substantive proof to infer a defendant's guilt, then those suspected of crime who chose to remain silent but are brought to trial will face a "new trilemma" of perjury, self-accusation by statement or self-accusation by silence.  Anne B. Poulin, Evidentiary Use of Silence and the Constitutional Privilege Against Self-Incrimination, 52 Geo. Wash. L. Rev. 191, 211 (1984).  Paradoxically, if this view prevailed, a person who chooses to remain silent or not cooperate with an investigation for whatever reason would be subject to having his silence affirmatively used against him to prove guilt, whereas the suspect who is questioned in a custodial setting must be told that he may remain silent and that the exercise of that right may not affirmatively be used against him.  If the Commonwealth were permitted to use both a person's pre-arrest responses and his silence in its case-in-chief, no avenues are available to a person in a non-custodial situation that would avert

(..continued)

> dictates "a fair state-individual balance by requiring the government . . . in its contest with the individual to shoulder the entire load" . . . and [a] realization that the privilege, while sometimes "a shelter to the guilty," is often "a protection of the innocent."

Id. at 55 (cited in Miranda, 384 U.S. at 460) (citations omitted).

self-incrimination.  See State v. Easter, 922 P.2d 1285, 1291 (Wash. 1996).

Second, the substantive use of silence conflicts with the privilege's function to "requir[e] the government in its contest with the individual to shoulder the entire load" of producing incriminating evidence.  Murphy, 378 U.S. at 55.  Here, when the Commonwealth did not obtain an incriminating statement from the appellant, it, in effect, constructed one from the appellant's silence and presented it as an admission of guilt.  To condone such a practice would undermine the notion that the government should accumulate evidence "by its own independent labors." Miranda, 384 U.S. at 461.

Third, substantive use of silence impairs the privilege's "preference for an accusatorial rather than an inquisitorial system of criminal justice."  Murphy, 378 U.S. at 55.  In this respect, the privilege "prohibits 'the prosecutor's use of any language or other device which compels a defendant to testify.'" Waldrop v. Commonwealth, 23 Va. App. 614, 622, 478 S.E.2d 723, 726 (1996), rev'd on other grounds, No. 970160 (Va. Jan. 9, 1998) (quoting State v. Pierce, 439 N.W.2d 435, 444 (Neb. 1989)); cf. Miranda, 384 U.S. at 461.  To allow the Commonwealth to prove that the appellant admitted his guilt by remaining silent in response to police questions effectively burdened the appellant's trial right not to testify because of the adverse inference that would be drawn from his failure to respond to the prosecution's

evidence of his silence.  Cf. Waldrop, 23 Va. App. at 623, 478 S.E.2d at 727 (upholding prosecutor's pre-evidentiary comment which "neither raised the expectation in the jury's mind that appellant would testify nor challenged the jury to notice and possibly draw an inference from whether or not appellant testified").

Moreover, to permit the Commonwealth to prove that the appellant tacitly admitted his guilt by remaining silent is tantamount to allowing the Commonwealth to derive an involuntary admission of guilt from the appellant.  To accord a suspect less protection where he exercises the basic and fundamental right to not speak in response to non-custodial questions, when the constitutions protect the right to remain silent in a custodial situation, would be illogical.  By allowing the jury to decide that the appellant's silence was an admission of guilt, the Commonwealth, in effect, "compelled" him to provide incriminating testimony at trial.  When the appellant remained silent and did not speak to Deputy Inge or testify at trial, the Commonwealth was allowed to prove that he nonetheless admitted ownership of the handgun.  See Miranda, 384 U.S. at 460 (quoting Malloy v. Hogan, 378 U.S. 1, 8 (1964)) (holding that privilege provides fundamental guarantee of "the right to 'remain silent unless he chooses to speak by his own will'").  We can think of few other techniques that would bring to bear this degree of direct compulsion on a criminal defendant to "speak his guilt" before

the jury.  See Doe, 487 U.S. at 213 (holding that Fifth Amendment serves "to spare the accused from having to reveal, directly or indirectly, his knowledge of facts relating him to the offense" (emphasis added)).

In summary, we find that the government's interest in using the appellant's pre-arrest silence in response to a police officer's question as substantive evidence of guilt is substantially outweighed by the burden which such practice imposes on the privilege against self-incrimination. Accordingly, we hold that the Commonwealth's substantive use of the appellant's silence impermissibly burdened the appellant's exercise of his privilege against compelled self-incrimination under Article I, Section 8 of the Virginia Constitution and that the trial court erred by admitting the evidence.

Because the trial court's admission of the evidence was constitutional error, we consider whether such error is harmless beyond a reasonable doubt.  See Scaggs v. Commonwealth, 5 Va. App. 1, 6, 359 S.E.2d 830, 832 (1987).  When an appellant's constitutional rights have been violated, we will reverse his conviction unless the Commonwealth proves that any constitutional error was "harmless beyond a reasonable doubt."  Schrum v. Commonwealth, 219 Va. 204, 213, 246 S.E.2d 893, 899 (1978) (citing Chapman v. California, 386 U.S. 18 (1967)); see Mason v. Commonwealth, 7 Va. App. 339, 348, 373 S.E.2d 603, 608 (1988). The Commonwealth has offered no proof or argument that proof of

the appellant's silence as an admission that he possessed the handgun was harmless in this case, and we perceive of no basis for such a holding. Admission of the evidence goes to the ultimate issue of guilt. If the jury considered the appellant's silence to be an admission that he owned the gun, which they were permitted to do, then the evidence was prejudicial. Therefore, the trial court's admission of the appellant's silence was reversible error.

For the foregoing reasons, we reverse the appellant's

conviction and remand the case for a new trial consistent with this opinion.

<u>Reversed and remanded.</u>

Benton, J., concurring.

I agree with the majority opinion that the Supreme Court of Virginia has ruled that the Fifth Amendment to the Constitution of the United States and Article I, Section 8 of the Constitution of Virginia may be "consider[ed] . . . to be identical in their application" in certain cases. Walton v. City of Roanoke, 204 Va. 678, 682, 133 S.E.2d 315, 318 (1963). See also Flanary v. Commonwealth, 113 Va. 775, 779, 75 S.E. 289, 291 (1912) (stating that the Fifth Amendment "is, in effect, identical" to Article I, Section 8 of the Constitution of Virginia). However, because the issue before this Court is solely the protection afforded by Article I, Section 8 of the Constitution of Virginia, I would decide this case independent of federal cases.

"It is fundamental that state courts [are] . . . free and unfettered [by federal law] . . . in interpreting their state constitutions." Minnesota v. National Tea Co., 309 U.S. 551, 557 (1940). However, a state court must provide a plain statement that it is relying on independent and adequate state law and that federal cases are being used for purposes of guidance only and do not themselves compel the result reached. The appropriate role of relevant federal case law must be clearly noted in the opinion. See Michigan v. Long, 463 U.S. 1032, 1040-41 (1983) (presuming that a state court opinion not explicitly announcing reliance on state law rests on reviewable federal law). See also Collier v. City of Tacoma, 854 P.2d 1046, 1050 (Wash. 1993)

(stating that the federal cases cited in the decision "are used for the purpose of guidance and do not themselves compel the result the court reaches under our state constitution").  Accord Cooper v. State, 889 P.2d 293, 308 (Okla. 1995); Immuno Ag. v. Moor-Jankowski, 567 N.E.2d 1270, 1278 (N.Y. 1991); State v. Carter, 370 S.E.2d 553, 555 (N.C. 1988); Kenyon v. Hammer, 688 P.2d 961, 963 (Ariz. 1984).[10]  Because the federal cases do not

_____

[10]Other state courts have elaborated on the reasons for independently interpreting their own state constitutions without relying on the federal interpretation of similar federal provisions.  In State v. Breit, 930 P.2d 792, 801-02 (N.M. 1996), the New Mexico Supreme Court stated:

> [A]s a general principle, we need not, in interpreting the provisions of our State Constitution, adopt the standard that is applicable to the comparable federal provision. . . .  We are bound by the decisions of the United States Supreme Court with regard to interpretation of the federal constitution.  Moreover, the decisions of that Court greatly influence our own interpretation of those provisions in our State Constitution that correspond to federal provisions.  But, . . . when this Court derives an interpretation of New Mexico law from a federal opinion, our decision remains the law of New Mexico even if federal doctrine should later change.  When citing to federal case law, we do so because we find persuasive the views expressed therein, and because we recognize the value of uniformity in advancement of application of the rights guaranteed by both our state and federal constitutions.  But we are not bound to interpret our State's Constitution or laws in accordance with federal doctrine.

(Citations omitted).  Likewise, in Commonwealth v. Rosenfelt, 662 A.2d 1131, 1140 (Pa. Super. 1995), the Pennsylvania Superior Court stated:

> "Although the wording of the Pennsylvania

- 20 -

compel under state law the result that the majority opinion reaches, I would clearly state that those cases are used only for the purpose of guidance.

The principle is ancient in Virginia that Article I, Section 8 of the Constitution of Virginia guarantees a person the right to silence and to invoke the right against self-incrimination whenever that person is the subject of suspicion or investigation.  See Cullen v. Commonwealth, 65 Va. 624 (1873).  The right is self-executing, see art. I, § 8, and does not depend upon whether circumstances of custodial interrogation exist.  A person's silence in response to police questioning is emphatic indication of the person's invocation of the right to remain silent.  Moreover, prohibition of the substantive use of pre-arrest silence will tend to discourage the possibility that police will manipulate the timing of an arrest to secure evidence that a person stood mute in the face of a

(..continued)
> Constitution is similar in language to the Fourth Amendment of the United States Constitution, we are not bound to interpret the two provisions as if they were mirror images, even where the text is similar or identical."  Furthermore, "[a]s an independent sovereign interpreting its own constitution, which preceded the Federal Bill of Rights, no presumptive validity should be given to United States Supreme Court interpretations of the Federal Constitution."  At best, such interpretations of Federal Constitutional law have only persuasive value.

(Citations omitted).

police officer's accusation.

In short, using adequate and independent state grounds, I would rule, as does the majority, as follows:

> [W]e find that the government's interest in using the appellant's pre-arrest silence in response to a police officer's question as substantive evidence of a tacit admission is substantially outweighed by the burden which such practice imposes on the privilege against self-incrimination. Accordingly, we hold that the Commonwealth's substantive use of the appellant's silence impermissibly burdened the appellant's exercise of his privilege against compelled self-incrimination under Article I, Section 8 of the Virginia Constitution and that the trial court erred by admitting the evidence.

Thus, although I concur in the majority's holding and most of its analysis of the weighing of the government's interest against the burden that is imposed on the policies underlying the privilege guaranteed by Article I, Section 8 of the Constitution of Virginia, I would not rely on federal law to control the analysis.