# Richmond

CECIL ELMO BAUGHAN v. COMMONWEALTH OF VIRGINIA.

April 26, 1965.

Record No. 5967.

Present, All the Justices.

*Frank A. S. Wright* and *Franklin J. Carter* (*Wright & Moore*, on brief), for the plaintiff in error.

*William G. Boice, Assistant Attorney General* (*Robert Y. Button, Attorney General*, on brief), for the Commonwealth.

CARRICO, J., delivered the opinion of the court.

Cecil Elmo Baughan, the defendant, was convicted by the trial court, sitting without a jury, of the unlawful sale of "one 1/5 bottle of A. B. C. whiskey" in violation of Code, § 4-58.[1] He was sentenced to pay a fine of $250.00 and to serve twelve months in jail, the jail sentence being suspended conditioned upon his good behavior for one year. In addition, an order of interdiction for one year (Code, § 4-52) was entered against the defendant and the whiskey found in his home was confiscated. The defendant was granted a writ of error.

The evidence shows that on November 27, 1963, at 12:30 A. M., Detective C. E. Phillips, Lieutenant Russell L. Baughan and Detective James S. Lucas, police officers of the city of Richmond, observed Gerald Handy leaving the rear door of the defendant's home. When approached by the officers, Handy was found to have in his possession a sealed one-fifth bottle of Town Club whiskey, bearing the stamp of A. B. C. store No. 2150.

Officer Phillips questioned Handy in the presence of Officer Lucas while Lieutenant Baughan "went around to the front of the house." Handy told Phillips that he had bought the whiskey from the defendant for $5.00. When Lieutenant Baughan returned to the scene, he talked to Handy and told him that he could be arrested "for having illegally acquired whiskey in his possession," whereupon Handy admitted to the lieutenant that he had bought the whiskey from the defendant.

The officers secured a search warrant and returned to the defendant's home with Handy in their company. After the officers had knocked for fifteen minutes to gain admittance, the defendant finally

---

[1] "§ 4-58. *Illegal sale of alcoholic beverages in general.*—If any person who is not licensed under the provisions of this chapter to sell alcoholic beverages in this State shall sell any alcoholic beverages other than permitted by the provisions of this chapter, he shall be guilty of a misdemeanor. * * * *"

responded and opened the door. When the group entered the house, Handy, in the presence of the defendant and the officers, accused the defendant of being "the man that sold him the fifth of whiskey." The defendant did not affirm or deny the accusation, but remained silent.

With Handy's assistance, the officers began a search of the premises. A large cabinet was found which contained six pints of whiskey and Handy told the officers "there was fifths in it at that time; he got the whiskey out of that cabinet and sold it to me . . . there was more whiskey there then than it is now." These statements were made in the defendant's presence but he made no reply thereto.

The officers and Handy discovered a total of fifty-nine bottles of whiskey concealed throughout the house. Whiskey was found hidden in a chair, in a closet and between the mattresses and springs of two beds, one of which was occupied by the defendant's wife and the other by a young woman.

At the trial, the defendant did not testify, but called Handy as a witness on his behalf. Handy stated that on the night in question he was drunk and had gone to the defendant's home "to see if I could borrow some money and get a drink from him." Handy said that the defendant would not lend him the money but instead gave him the bottle of whiskey which the officers found in his possession. Handy testified that when the officers first asked him if he had bought the whiskey from the defendant he said "No", but finally admitted that he had purchased it after the officers threatened to arrest him for "night prowling and drunkeness."

Handy, on the witness stand, could not remember pointing out the defendant, in the presence of the officers, as the person who had sold him the whiskey. The witness denied buying the whiskey and insisted that the defendant had given it to him, although he admitted that he had known the defendant only a short time and had seen him only twice.

The defendant first contends that the trial court improperly admitted into evidence the statements made by Handy.

The defendant says that the statements made by Handy, outside of the house, were inadmissible as hearsay. This testimony was excluded by the trial court, upon the defendant's objection, during the Commonwealth's case in chief. However, after Handy had testified and the defendant had rested, the Commonwealth's Attorney recalled Officer Phillips who was permitted to testify in detail as to his conversation with Handy, without objection by the defendant.

Then the defendant called Lieutenant Baughan as a witness and had him testify as to his conversation with Handy, including the latter's statement that he "had bought the whiskey." Thus, the testimony as to the conversations outside of the home, although hearsay, when admitted without objection and at the very instance of the defendant, could properly be considered by the trial court and given its natural probative effect. *Stevens* v. *Mirakian*, 177 Va. 123, 131, 12 S. E. 2d 780; *Taylor* v. *Commonwealth*, 122 Va. 886, 891, 892, 94 S. E. 795.

■ The defendant next asserts that the officers threatened Handy with arrest and thus coerced him into stating that he had purchased the whiskey from the defendant. The defendant then argues that the court should have excluded the evidence of the defendant's alleged tacit admission because the admission was predicated upon the coerced accusation by Handy.

The record does not support the assertion that Handy's statements were the products of coercion or that he incriminated the defendant only because of the threat of his own arrest. The testimony of Officer Phillips, who first talked to Handy, shows conclusively that Handy's statement to him and the accusation in the presence of the defendant were free and voluntary. Phillips testified that Handy told him that he had bought the whiskey from the defendant and had paid $5.00 for it. Phillips further said that Handy "was eager to go back in there himself" because "he worked for the penitentiary and did we want to buzz the joint, let's go." There is not the slightest indication that Phillips threatened Handy in any way or held out to him any inducement to secure his statements.

It is true that Lieutenant Baughan testified that he later told Handy that he could be arrested for possessing illegally acquired whiskey. But that threat, if it be such, was, according to Handy, never made to him. Instead, Handy testified that he was threatened with arrest for drunkenness and night prowling and because of this decided to incriminate the defendant. A reading of the record shows that Handy was so completely discredited while on the witness stand that the trial court was entirely justified in rejecting his testimony, in accepting Officer Phillips' version that Handy "was eager to go back in there himself" and in finding that Handy's accusation of the defendant was a free and voluntary act.

■ The defendant next contends that his "conduct under the circumstances was not a tacit admission." Here, the defendant says that while it is uncontradicted that Handy's "accusation was made in

the defendant's general presence, there is no evidence that his attention was attracted to, or that he heard, the singular statement by Handy or that he had opportunity in the excitement of the moment to deny it."

The general rule applying to tacit admissions is set forth in *Owens* v. *Commonwealth,* 186 Va. 689, 699, 43 S. E. 2d 895:

" '. . . In order that the silence of one accused of crime following a statement of a fact tending to incriminate him may have the effect of a tacit admission, he must have heard the statement and have understood that he was being accused of complicity in a crime, the circumstances under which the statement was made must have been such as would afford him an opportunity to deny or object, and the statement must have been such, and made under such circumstances, as would naturally call for a reply. The test is whether men similarly situated would have felt themselves called upon to deny the statements affecting them in the event they did not intend to express acquiescence by their failure to do so . . . .' "

The evidence before us shows clearly that the defendant's tacit admission met the tests just cited. Handy's statements, uttered on two separate occasions, incriminating the defendant, were made in the latter's presence under such circumstances that he was bound to have heard and understood them. He had full opportunity to deny or object but chose, instead, to remain silent. The defendant was in a situation where, if he had not sold Handy the whiskey, all reason and common sense called upon him to refute the accusation. If he were innocent of wrongdoing, he surely would have said, as Handy vainly tried on the witness stand to say for him, that he had made a gift of the whiskey to Handy. Any reasonable man similarly situated, acting upon natural impulses, would have felt himself called upon to deny the statements if they were untrue. The defendant's failure to deny expressed acquiescence in the truth of the accusations.

Finally, the defendant contends that the evidence was "insufficient to prove the corpus delicti." Here, the defendant argues that even though his conduct may have constituted a tacit admission of guilt, there was no corroboration of the admission and there was, therefore, insufficient evidence that he made a sale of the whiskey to Handy.

As stated in *Lucas* v. *Commonwealth,* 201 Va. 599, 603, 112 S. E. 2d 915, the corpus delicti "is the fact that the crime charged has been actually perpetrated. It is the body or substance of the crime.

The corpus delicti consists not merely of an objective crime, but of the defendant's agency in the crime."

There is no issue here as to the defendant's agency in the transaction between him and Handy. The only question is whether a crime was thereby perpetrated, that is, whether an unlawful sale of whiskey took place.

"The corpus delicti may be established by circumstantial as well as direct evidence." *Lucas* v. *Commonwealth, supra,* 201 Va., at p. 603. When all the circumstantial and direct evidence in this case is viewed, we are of opinion that the corpus delicti was fully established and that it was shown beyond a reasonable doubt that the crime was perpetrated.

The police officers observed Handy leaving the rear door of the defendant's house in the early morning hours. When encountered, Handy was found to have the whiskey in his possession and he freely stated that he had purchased it from the defendant, with whom he had a mere casual acquaintance. Upon confronting the defendant inside the house, Handy, on two occasions, accused him of having made the sale. The defendant remained silent in the face of these accusations. Large quantities of whiskey were found concealed in unlikely places throughout the house. Some of the whiskey had been removed from the large cabinet, where Handy said it had been stored, and hidden elsewhere, leading to the natural conclusion that there was a surreptitious attempt by the defendant to conceal the whiskey during his long delay in answering the officers' knocks on the door.

Under these circumstances the trial court was fully warranted in finding that an unlawful sale of whiskey had taken place. The trial court was justified in rejecting Handy's latter-day story that the whiskey was a gift from the defendant.

The defendant also contends that the corpus delicti was not proven because the Commonwealth failed to show that he did not have a license to sell whiskey.

There is no merit in this contention. In 48 C. J. S., Intoxicating Liquors, § 364, p. 536, it is said:

"Where a license or permit to manufacture, sell, transport, or have possession of intoxicating liquors would be a defense to a prosecution for a violation of the liquor laws, the prosecution is not bound to show that the act was performed without a license or permit, but the burden is on accused to show that he had such license or permit,

for the reason that the matter lies peculiarly within the knowledge of accused who can easily show a permit or license if he has one. . . ."

We adopt this rule and hold that there was no burden upon the Commonwealth to show that the defendant did not have a license. No other position would be reasonable in view of the provisions of the statutes of Virginia relating to alcoholic beverages.

In Virginia, whiskey may be sold at retail only (1) in a government store, that is, one operated by the Alcoholic Beverage Control Board (Code, § 4-28), (2) by a licensed druggist "only for medicinal purposes and then only upon a prescription written by a physician upon a form furnished by the Board" (Code, §4-49), or (3) by persons operating United States customs bonded warehouses and holding retail licenses issued by the Board, permitting sales to certain "foreign armed forces personnel" (Code, § 4-85).

It should be unnecessary to say that the defendant could not, by any stretch of the law or the imagination, have held a license to sell whiskey.

We find no error in the conviction of the defendant. Accordingly, the judgments of conviction and interdiction appealed from will be

*Affirmed.*