UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Petty and AtLee
Argued at Norfolk, Virginia


DWAYNE DEMARIO MARROW

                                                    MEMORANDUM OPINION* BY
v.      Record No. 1041-16-1                        JUDGE WILLIAM G. PETTY
                                                    APRIL 25, 2017

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
H. Vincent Conway Jr., Judge Designate

Charles E. Haden for appellant.

Lauren C. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Dwayne Demario Marrow was convicted, after a bench trial, of aggravated malicious

wounding in violation of Code § 18.2-51.2(A)[1] and the use of a firearm in the commission of a

felony in violation of Code § 18.2-53.1. He argues that the trial court erred in denying his

motion to strike the evidence and his motion to set aside the verdict for two reasons. First,

Marrow argues that the Commonwealth failed to prove beyond a reasonable doubt the criminal

agent element as required by both statutes. Second, Marrow argues that the Commonwealth

failed to prove beyond a reasonable doubt that the victim sustained "permanent and significant

physical impairment" as required by the aggravated malicious wounding statute. For the

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Code § 18.2-51.2(A) provides, in pertinent part, that any person who "maliciously
shoots . . . any other person . . . with the intent to main, disfigure, disable or kill, he shall be
guilty of a Class 2 felony if the victim is thereby severely injured and is caused to suffer
permanent and significant physical impairment."

following reasons we conclude that there was sufficient evidence to establish Marrow's identity as the criminal agent and therefore we affirm his conviction of the use of a firearm in the commission of a felony. However, we also conclude that the evidence was insufficient for the trial court to find that the victim sustained "permanent and significant physical impairment" as required by the aggravated malicious wounding statute; accordingly, we reverse Marrow's conviction of aggravated malicious wounding and remand for a new trial on the lesser-included offense of malicious wounding.

## I. BACKGROUND

Because the parties are fully conversant with the record in this case and this memorandum opinion carries no precedential value, we recite only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal. "On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Wells v. Commonwealth, 65 Va. App. 722, 725, 781 S.E.2d 362, 364 (2016) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

On June 15, 2014, Newport News police officers responded to a shooting at an apartment complex on Adams Drive. When officers arrived at the scene, they saw a woman (the victim) covered in blood, sitting in an apartment corridor, with her hands around her throat. The victim had what appeared to be a gunshot wound to the side of her neck and an exit wound to her back. The victim's sister (the witness) was also at the scene of the shooting when the officers arrived. A few hours later, the witness gave a statement to a Newport News detective at police headquarters that was audiotaped and later transcribed. While at police headquarters, the witness was shown a photographic lineup that included Marrow. The witness selected Marrow by marking her initials beside Marrow's photograph.

- 2 -

On July 17, 2014, the detective took photographs of the victim in the hospital showing the victim with bandages on her neck and on her back. Sometime after July 17, 2014, the detective saw the victim again but this time with the victim's neck bandages removed. At that time the victim had what appeared to be stitches or staples where the neck bandages had been. The victim failed to appear at Marrow's trial.

At Marrow's trial, the Commonwealth called the witness to testify and began to question the witness regarding her statement to the detective the night of the shooting. When the witness consistently responded that she did not know or could not recall what she said to the detective the night of the shooting, the Commonwealth asked, without objection, to play an audio recording of her statement.[2] The transcript of the witness' statement was subsequently admitted into evidence by the trial court.[3] The witness also denied initialing Marrow's photograph in the photographic lineup.

---

[2] After the audio recording was underway, Marrow attempted to object but was told by the judge not to interrupt and that the judge would hear him later. After the audio played, Marrow stated that his objection was going to be that the audio tape contained statements that went beyond addressing the Commonwealth's specific question of whether the witness told police that Marrow shot up in the air, which was the question that triggered the Commonwealth's request that the audio recording of the witness' statement be played for the court.

[3] When the Commonwealth moved to admit the transcript of the witness' statement to police, Marrow's only objection to the transcript was that the witness had testified that she did not recall making those statements. The judge responded, "I'm going to go ahead and allow the transcript. I think she has been thoroughly impeached as an adverse witness. With exceptions allowed." Because Marrow failed to object to the witness' statement to police as hearsay, the trial court was free to consider the statement as substantive evidence as well as for impeachment purposes. See Baughan v. Commonwealth, 206 Va. 28, 30-31, 141 S.E.2d 750, 753 (1965) (noting that the testimony of police officers regarding out-of-court statements of a witness who testified at trial, although hearsay, "when admitted without objection and at the very instance of the defendant, could properly be considered by the trial court and given its natural probative effect"); see also Stevens v. Mirakian, 177 Va. 123, 131, 12 S.E.2d 780, 783 (1941) ("The general rule is that hearsay testimony admitted without objection may be properly considered and given its natural probative effect."); Crawley v. Commonwealth, 29 Va. App. 372, 376-77, 512 S.E.2d 169, 171 (1999) ("At trial, appellant merely objected to the admission of the [fingerprint] cards subject to cross-examination, and he never conducted any cross-examination,

## II. STANDARD OF REVIEW

When considering the sufficiency of the evidence presented below, "we presume the judgment of the trial court to be correct." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002) (quoting Broom v. Broom, 15 Va. App. 497, 504, 425 S.E.2d 90, 94 (1992)). Indeed, "[i]n our review of the sufficiency of the evidence, we must affirm the conviction unless the trial court was plainly wrong or the conviction lacked evidence to support it." Parham v. Commonwealth, 64 Va. App. 560, 565, 770 S.E.2d 204, 207 (2015); Code § 8.01-680.

Furthermore, we will not "substitute our judgment for that of the trier of fact." Beshah v. Commonwealth, 60 Va. App. 161, 168, 725 S.E.2d 144, 147 (2012) (quoting Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002)). Instead, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

---

thereby waiving any objections to admissibility. Therefore, for purposes of appeal, the evidence establishes conclusively that the fingerprints on the . . . cards were obtained from [appellant] . . . ."). Cf. Hodges v. Commonwealth, 45 Va. App. 735, 773, 613 S.E.2d 834, 852 (2005) ("When hearsay evidence is admitted in a jury trial without a limiting instruction, the finder of fact may consider it for any purpose."), rev'd on other grounds, 272 Va. 418, 634 S.E.2d 680 (2006). Like the appellant's objection to the admission of the fingerprint cards at trial in Crawley, Marrow's objection to the admission of the transcript of the witness' statement was not a hearsay objection, thus permitting the judge to consider the statement as substantive evidence.

## III. ANALYSIS

## A. THE IDENTITY OF THE GUNMAN

Marrow's assignment of error challenges both his conviction for aggravated malicious wounding and use of a firearm in the commission of a felony, alleging that "with regard to both charges, the Commonwealth failed to prove beyond a reasonable doubt that Marrow shot [the victim]." Marrow argues that absent any eyewitness testimony at trial that he shot the victim and the fact that the witness entirely repudiated her earlier, uncorroborated statement to police, Marrow's identity as the gunman, i.e., the criminal agent, was not proven beyond a reasonable doubt. We disagree.[4]

"[T]he standard for judging the *sufficiency* of the evidence to prove identity . . . in a criminal case . . . [is] the Commonwealth must prove that fact beyond a reasonable doubt." Wells v. Commonwealth, 65 Va. App. 722, 728, 781 S.E.2d 362, 365 (2016) (quoting Crawley v. Commonwealth, 29 Va. App. 372, 377-78, 512 S.E.2d 169, 172 (1999)). Under this standard, each piece of evidence is not viewed in isolation but rather, "we review the totality of the evidence to determine whether it was sufficient to prove the offense." Id. at 729, 781 S.E.2d at 365 (quoting Bowling v. Commonwealth, 51 Va. App. 102, 107, 654 S.E.2d 354, 356 (2007)). Identity may be proven by circumstantial evidence. Snead v. Commonwealth, 4 Va. App. 493, 496, 358 S.E.2d 750, 752 (1987).

---

[4] Although we conclude that the evidence was insufficient to prove the permanent and significant physical impairment element of aggravated malicious wounding, we must also address the argument that Marrow was not the individual who shot the victim. If we were to conclude that the evidence was insufficient to establish this element of the offense, the principles of double jeopardy would bar retrial on this or any lesser-included offense. See Burks v. United States, 437 U.S. 1, 18 (1978) (holding that "the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient" to prove a necessary element).

Furthermore, it is well-established that it "is the function of a [fact finder] to determine the credibility of witnesses and the weight of the evidence and to resolve all conflicts in the evidence." Ravenwood Towers, Inc. v. Woodyard, 244 Va. 51, 57, 419 S.E.2d 627, 630-31 (1992). This Court does not revisit such conflicts on appeal unless reasonable people, "after weighing the evidence and drawing all just inferences therefrom, could reach but one conclusion." Towler v. Commonwealth, 59 Va. App. 284, 292, 718 S.E.2d 463, 467 (2011) (quoting Molina v. Commonwealth, 47 Va. App. 338, 369, 624 S.E.2d 83, 98 (2006)).

At trial, the detective testified that she developed Marrow as a suspect and included him in a photographic lineup that she presented to the witness the night of the shooting. The witness then selected Marrow by marking her initials beside his photograph. A transcript of the witness' statement to the detective was also entered into evidence without a hearsay objection by Marrow. In that statement, the witness told the detective that she went to Adams Drive to fight with another woman over Marrow. The witness told the detective,

> She [the victim] broke up the fight. He [Marrow] said y'all get the fuck from around here. I ain't forget. I'll shoot you. You think I won't shoot you. My sister [the victim] starts swiping and trying to get him to move the gun out of her face. And he shot in the air. Then my sister was moving the gun trying to move it telling him I'm on your side. I'm out here with you bro. Why you doing this? What you talking about? And then he just started shooting. And then that's when my sister grabbed her neck and started gasping for air.

At trial, the witness' testimony was inconsistent with her statement to the detective. She testified that she knew Marrow as a "friend" and at the time of the shooting they were romantically involved, that she did not remember what she told the detective the night of the shooting because she was drunk and high on drugs at the time, that there were a lot of people on Adams Drive that night with guns, including Marrow, and that she did not see Marrow raise or fire a gun but rather had been coerced by family members into falsely implicating Marrow in the

shooting. The witness denied that she marked her initials beside Marrow's picture in the photographic lineup.

Here, the trial court credited the witness' statement to the detective the night of the shooting and rejected her trial testimony to the extent it was inconsistent with her statement. The trial court stated, "I think the statement by [the witness] in proximity to the event is more believable than her testimony in chief today." Regarding the witness' testimony that she was drunk and high on drugs when she gave her statement to the detective, the court noted,

> I do think she was sufficiently aware that night, she was sufficiently lucid to make an intelligent statement and she explained why this happened . . . . I think she told the most correct story to the officer within hours of the incident, and I think the Commonwealth has sufficiently impeached her change of story today.

In rejecting the witness' testimony that family members coerced her into making her statement to the detective, the court noted, "Now she said my mother made me do it, my mother, my mother – and [the witness] doesn't strike me as the sort of person I could make do anything."

In its role as fact finder and assessor of witness credibility, the court was free to accept as believable or reject as implausible any part of the witness' testimony at trial. See Parham, 64 Va. App. at 565, 770 S.E.2d at 207. Regarding the conflicting testimony of whether the witness identified Marrow as the gunman by marking her initials beside Marrow's photograph in the photographic lineup, the court was free to resolve the conflict in favor of the detective's testimony. See Towler, 59 Va. App. at 292, 718 S.E.2d at 467 ("Potential inconsistencies in testimony are resolved by the fact finder."). Likewise, the court was free to reject the witness' repudiation of her earlier statement to the detective.

Contrary to Marrow's argument, eyewitness testimony is not necessary to establish identity in a criminal case. See Snead, 4 Va. App. at 496, 358 S.E.2d at 752. Moreover, the fact that at trial the witness repudiated the statement she made to the detective the night of the

shooting did not prevent the trial court from considering the statement as substantive evidence absent an objection to the statement as hearsay. See, e.g., Baughan v. Commonwealth, 206 Va. 28, 30-31, 141 S.E.2d 750, 753 (1965).

Therefore, considering the totality of the evidence, including (1) the witness' statement the night of the shooting that as Marrow fired a gun in close proximity to the victim that the victim immediately clutched her throat and started gasping for air; (2) the officers' testimony that they saw the victim at the scene, covered in blood, clutching her throat, and with what appeared to be a gunshot wound to the neck; and (3) the detective's testimony that the witness identified Marrow by marking her initials beside his photograph in a photographic lineup, a reasonable fact finder could have found beyond a reasonable doubt that Marrow shot the victim. Thus, the evidence was sufficient to establish the criminal agent element required for a conviction under both Code §§ 18.2-51.2(A) and 18.2-53.1.

### B. PERMANENT AND SIGNIFICANT PHYSICAL IMPAIRMENT

Marrow also argues that "with regard to the charge of aggravated malicious wounding, the Commonwealth failed . . . to prove that the victim sustained 'permanent and significant physical impairment.'" Marrow argues that the detective's testimony regarding the victim's injuries and the photographs of the victim were insufficient to prove beyond a reasonable doubt that the victim suffered "permanent and significant" physical impairment as required by the aggravated malicious wounding statute. We agree.

The aggravated malicious wounding statute requires that the victim suffer physical impairment that is both "permanent" and "significant." Code § 18.2-51.2(A). Physical impairment is "any physical condition, anatomic loss, or cosmetic disfigurement which is caused by bodily injury, birth defect, or illness." Newton v. Commonwealth, 21 Va. App. 86, 90, 462

S.E.2d 117, 119 (1995) (applying the definition of physical impairment codified in Code § 51.5-3 to the aggravated malicious wounding statute) (emphasis omitted); see also Code § 51.5-3.

Furthermore, expert testimony is not required to prove that an impairment is permanent and significant; the victim's testimony and physical evidence may suffice. See Martinez v. Commonwealth, 42 Va. App. 9, 25, 590 S.E.2d 57, 64 (2003) (finding that the victim's testimony and the physical evidence were sufficient for the jury to have reasonably concluded that the victim had a permanent and significant physical impairment). "To prove an [impairment] is permanent, the Commonwealth need not present definitive testimony that a victim's injuries will never improve" but can leave the determination of permanency to the "common sense of the jury." Lamm v. Commonwealth, 55 Va. App. 637, 644-45, 688 S.E.2d 295, 299-300 (2010).

Finally, a scar may constitute a significant and permanent physical impairment. See Newton, 21 Va. App. at 90, 462 S.E.2d at 119 (finding that scars caused by defendant cutting the victim with a box cutter constituted "permanent and significant physical impairment").

Here, the detective testified that she saw the victim with bandages on her back and neck in the hospital approximately one month after the shooting. At that time, the detective took photographs of the victim, which were entered into evidence at trial over Marrow's objection. The detective testified that the photographs accurately depicted the victim as the detective saw her that day. The detective also testified that sometime later she saw the victim without her bandages and that the victim had what appeared to be stitches or staples where the bandages had once been. This was the extent of the testimony and physical evidence of the nature of the victim's injuries presented at trial.

At trial, the court asked the Commonwealth, "Where is the evidence that she has a permanent scar?" The Commonwealth responded, "I cannot produce any on that front, Judge." The court later noted that,

> And the Court had a question on the permanency, thinking that you can have an injury without permanency, you can have bruising without permanency, but in this particular case and the case cited by the Commonwealth [Hawkins] would appear to support the contention that surgery alone leaves a permanent injury at some level.

The court's reliance on Hawkins v. Commonwealth, 64 Va. App. 650, 770 S.E.2d 787 (2015), for the proposition that surgery alone results in a permanent injury is misplaced. Unlike Marrow, the appellant in Hawkins *conceded* that a half-inch wide surgical scar extending from the victim's sternum to his navel was a significant and permanent physical impairment under the aggravated malicious wounding statute. Id. at 654, 770 S.E.2d at 789. Thus, this Court never made an explicit finding in Hawkins that surgery alone results in a significant and permanent physical impairment.

Furthermore, at the hearing on the motion to set aside the verdict, the court specifically found that,

> [w]hen you handle a weapon, in close proximity to other people and use it in the manner it was used and you fire it and you leave a mark or a scar on another person in the area of their face or neck that, to the court, is aggravated malicious wounding.
>
> And I regard that as a significant scar, not only in this case, on a female, but I would say especially a female. You shoot someone in a visible area and leave a scar, I think that's aggravated malicious wounding.

As the Commonwealth correctly points out, the trial court is permitted to make reasonable inferences from facts. Dowden v. Commonwealth, 260 Va. 459, 468, 536 S.E.2d 437, 441 (2000). However, the court may not infer a fact. Facts must be proven, and the inferences drawn from those facts must be reasonably related to the proven facts. Id.

Here, although the trial court asserted that the evidence supported the "contention that surgery alone leaves a permanent injury," the record reflects that it was *unknown* at the time of trial if the victim even had surgery. Furthermore, neither the testimony of the police officers, nor the photographs of the victim establish any permanent and significant impairment. The officer at the scene of the shooting simply testified that the victim had what appeared to be a gunshot wound to the side of her neck and an exit wound to her back. The detective who saw the victim a month later and who took the photographs testified that she observed the victim with bandages to her neck and back area. The photographs admitted at trial show the victim with bandages to the side of her neck and the side of her back. The photographs showed that all of the victim's injuries as the result of the shooting were still bandaged and thus not observable by the detective.

Finally, apart from the testimony of officers who observed the victim at the time she was shot and the photographs of the victim taken approximately one month after the shooting, the only other evidence offered at trial of the victim's injuries was the detective's testimony that she later saw the victim with what appeared to be staples or stitches in her neck where the bandages had once been. Significantly, there was no testimony regarding the victim's injuries from anyone who saw the victim *after* the staples or stitches were removed from her neck. Thus, no evidence, either testimonial or physical, of what degree of scarring, if any, resulted from the removal of any stitches or staples.

Therefore, any inference that the victim suffered a significant and permanent impairment as a result of surgery or as a result of the shooting in the form of visible scarring is pure speculation and is not based on any proven fact nor reasonably related to any proven fact.

The cases on which the Commonwealth relies to establish that the victim suffered a significant and permanent physical impairment are distinguishable. In all those cases, the victim testified regarding his or her injuries and exhibited those injuries to the fact finder. In Newton v

- 11 -

Commonwealth, in a bench trial five months after the victim was attacked with a box cutter, the victim testified regarding his injuries and displayed an "obvious and visible" scar from a facial cut and a visible scar from a cut to his ear. 21 Va. App. at 90, 462 S.E.2d at 119.

In Martinez v. Commonwealth, the victim was shot and had surgery to remove a bullet that had lodged next to her spine. 42 Va. App. at 24, 590 S.E.2d at 64. The victim testified at trial regarding her injuries and exhibited her scars to the jury. Id. at 24-25, 590 S.E.2d at 64. The jury also observed photographs of her wounds prior to surgery. Id. at 25, 590 S.E.2d at 64.

Here, unlike the victims in Newton, and Martinez, the victim did not testify regarding her injuries nor did she exhibit any injuries or scarring to the court.

Simply put, the mere speculative possibility that the victim suffered a significant and permanent physical impairment was insufficient to convict Marrow of aggravated malicious wounding. Therefore, the judgment of the trial court was plainly wrong.

### C. USE OF A FIREARM IN THE COMMISSION OF A FELONY

The indictment charging Marrow with use of a firearm in the commission of a felony alleged that he "did use, attempt to use, or display in a threatening manner, a firearm, while committing or attempting to commit murder, rape, forcible sodomy, object sexual penetration, robbery, carjacking, *malicious wounding*, aggravated malicious wounding, *or* abduction in violation of § 18.2-53.1 of the Code of Virginia (1950) as amended." (Emphasis added). The Supreme Court has previously held that Code § 18.2-53.1 "is a separate and distinct offense" and that "the [underlying felony] and the crime of using a firearm in committing [that felony] have different elements as a matter of law, although they may have common elements as a matter of fact." Jones v. Commonwealth, 218 Va. 18, 22, 235 S.E.2d 313, 315 (1977). This Court has further held that "where an indictment is returned for an alleged violation of Code § 18.2-53.1, the underlying felony must be proved beyond a reasonable doubt, and that to obtain a conviction

- 12 -

of that section it is not necessary to separately indict and prosecute the underlying felony." Davis v. Commonwealth, 4 Va. App. 27, 31, 353 S.E.2d 905, 907 (1987). Thus, it stands to reason that if the Commonwealth need not charge the underlying felony, it may rely on any underlying felony set forth in the statute and charged in the indictment as long as the evidence proved the defendant committed that felony.

In convicting Marrow of aggravated malicious wounding, the trial court, of necessity, found that the Commonwealth had proven beyond a reasonable doubt all the elements necessary to sustain a conviction of the lesser offense of malicious wounding, in violation of Code § 18.2-53.1. Further, the only element of Code § 18.2-53.1 challenged by Marrow on appeal is proof that he was the criminal agent. Notably, he has not challenged the trial court's finding that the victim was shot with a firearm, that the shooting was malicious, and that it was done with the intent to maim, disfigure, disable or kill. As noted above, we have concluded that the evidence was sufficient to prove he was the criminal agent. Thus, viewing the evidence in the light most favorable to the Commonwealth, the evidence is sufficient to establish that Marrow used a firearm in the commission of malicious wounding, as charged in the indictment. Accordingly, we affirm that conviction.

IV. CONCLUSION

We conclude that the evidence was sufficient to establish Marrow's identity as the criminal agent and therefore, we affirm his conviction of the use of a firearm in the commission of a felony in violation of Code § 18.2-53.1. However, we also conclude that the evidence was insufficient to prove that the shooting resulted in a permanent and significant physical impairment; accordingly, we reverse his conviction for aggravated malicious wounding, Code

§ 18.2-51.2(A), and remand for a new trial for the lesser-included offense of malicious wounding if the Commonwealth be so advised. [5]

Affirmed in part, reversed in part, and remanded.

---

[5] Because both parties do not consent to a remand solely for resentencing on the lesser-included offense of malicious wounding, we cannot remand for that purpose. See Britt v. Commonwealth, 276 Va. 569, 576, 667 S.E.2d 763, 766-67 (2008); Frango v. Commonwealth, 66 Va. App. 34, 46, 782 S.E.2d 175, 180-81 (2016).